[No. F006623. Fifth Dist. June 17, 1987.]

In re the Marriage of NANCY A. and ROBERT G. NORVALL.
NANCY A. NORVALL, Appellant, v.
ROBERT G. NORVALL, Respondent.

## COUNSEL

Hugh T. Thomson for Appellant.

Stringham & Rogers, Robert P. Stringham and Bret D. Hillman for Respondent.

## OPINION

PETTITT, J.* —In January of 1984, appellant, Nancy Norvall (wife), filed a petition for dissolution of marriage. The marriage between appellant and respondent, Robert Norvall (husband), was dissolved on October 29, 1984. Pursuant to a stipulated settlement agreement, custody of their two minor children would be shared jointly. In addition, husband agreed to pay child support in the amount of $350 per child, per month, to wife. Husband also agreed to pay wife $1,900 per month in spousal support.

At the same time, the agreement also dealt with the division of community property and debts. In this division of property, husband received The Country Gourmet Restaurant business subject to all the debts owed to the creditors. After the above orders had been entered, The Country Gourmet Restaurant failed, resulting in large debt payments by husband and his current wife.

On August 16, 1985, husband filed an order to show cause for modification of child and spousal support.

On October 22, 1985, a statement of decision was filed wherein the trial court explained its determination to modify the child and spousal support awards. Citing hardship expenses and the fact the children were with hus-

---

* Assigned by the Chairperson of the Judicial Council.

band 44 percent of the time, the court modified the child support award to $219.52 per child, per month, and the spousal support award to $1,056 per month.

Appellant wife appeals from the order modifying child and spousal support. The issues presented in her appeal are discussed below. We conclude this case must be remanded to the trial court. The trial court is directed to redetermine the proper amount of child support in accordance with the views expressed herein, and to determine the issue of modification of spousal support in accordance with the views we express.

I

WAS IT NECESSARY TO PROVE A CHANGE IN CIRCUMSTANCES BEFORE MODIFICATION OF THE CHILD SUPPORT AWARD COULD BE CONSIDERED?

■ Wife argues husband failed to show a sufficient change of circumstances to justify a modification of the child support award. Generally, a change of circumstances must be shown before a support order can be modified. Once this hurdle has been crossed, any order for child support may be modified or revoked as the court may deem necessary. (Civ. Code, § 4700, subd. (a).)[1] A court has broad discretion to modify such an order depending on the circumstances of the case before it. (*Reese* v. *Reese* (1961) 190 Cal.App.2d 181, 183 [11 Cal.Rptr. 590].)

An alternative procedure to modify a support order is available under section 4700.1. Under section 4700.1, a modification may be sought subsequent to one year after the entry of a previous child support award, or when it is based on a significant decrease in the income of the moving party. (§ 4700.1, subds. (b), (d).)

In this case, however, a conclusive determination on the existence of a legitimate change of circumstances or the applicability of section 4700.1 is unnecessary. In 1984, a comprehensive scheme governing the award of child support, titled the Agnos Child Support Standards Act of 1984 (hereinafter the Agnos Act), was passed. (See §§ 4720-4732.) It became operative July 1, 1985. The stated legislative intent of this enactment was to provide a "single standard to promote equitable, adequate child support awards." (§ 4720, subd. (a).) In an apparent recognition of the potential impact this act would have on child support awards, the Legislature passed section 4730, which permits the automatic review of all child support awards or-

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

dered prior to the effective date of the Agnos Act: "This chapter constitutes a change in circumstances for the purpose of allowing the modification of child support orders entered prior to July 1, 1985."

The original child support award in this case falls within the parameters of section 4730. A valid basis to review the award therefore exists.

## II

### WAS THE CHILD SUPPORT AWARD PROPERLY MODIFIED?

Wife contends the trial court improperly deducted an amount, associated with the failure of a business, from husband's gross income in violation of the provisions governing the determination of child support awards. Specifically, wife asks this court to interpret the term "hardship expense" as it is defined under the Agnos Act.

However, in view of our holding herein, it is not necessary, for the purpose of this decision, to decide that issue because we conclude this case must be remanded to the trial court for the purpose of determining the amount of child support according to the terms of the Agnos Act. Nevertheless, we will discuss the issue in an effort to offer guidance to the trial court upon remand.

The statement of decision indicates the trial court either may have applied the Agnos Act improperly in calculating the child support award, or failed to apply it at all. It is apparent the trial court based its award on both parties' "net disposable incomes" as shown on their income and expense declarations, rather than calculating their "net disposable income" in the manner required by the Agnos Act. Through an application of the Agnos Act, calculation of the net disposable income will often result in a figure different from that on the income and expense declaration.

Under the Agnos Act, a mandatory minimum child support award is determined pursuant to a standard formula. (§ 4722.) The first step of this procedure is to determine the annual gross income of each parent. (§ 4721, subd. (a).) Gross income includes, but is not limited to:

"(1) Income such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, and spousal support actually received from a person not a party to the order.

"(2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business.

"(3) To the extent that income derived from paragraphs (1) and (2) is insufficient to produce a mandatory minimum child support award at the AFDC standard for the same number of children, upon the request of either party, the court may consider investment assets of either or both parties which could be liquidated. To determine and apportion the mandatory minimum child support award at the AFDC level, the court shall also consider, to the extent consistent with the best interests of all of the children, the earning capacity of either or both parents." Once the gross income has been determined, the net disposable income is then calculated. (§ 4721, subd. (c).) This is done by subtracting certain standard deductions from the gross. These standard deductions include:

"(1) The state and federal income taxes attributed to the parent. Federal and state income tax deductions shall bear an accurate relationship to the tax status of the parties (that is, single, married, married filing separately, or head of household) and number of dependents.

"(2) Deductions attributed to the employee's contribution or the self-employed worker's contribution pursuant to the Federal Insurance Contributions Act (FICA), or an amount not to exceed that allowed under FICA for persons not subject to FICA, provided that the deducted amount is used to secure retirement or disability benefits for the parent.

"(3) Deductions for mandatory union dues and retirement benefits, provided that they are required as a condition of employment.

"(4) Deductions for health insurance premiums and state disability insurance premiums.

"(5) Any child or spousal support actually being paid by the parent pursuant to a court order, to or for the benefit of any person who is not a subject of the award to be established by the court." In addition, the court may deduct certain unusual amounts in cases of "extreme financial hardship." Pursuant to section 4725,[2] examples of extreme financial hardship

---

[2] Section 4725 provides: "In the event that a parent is experiencing extreme financial hardship due to justifiable expenses resulting from the circumstances enumerated in this section, upon the request of a party, the court may allow such income deductions as may be necessary

include extraordinary health expenses, uninsured catastrophic losses, and the minimum basic living expenses of either parent's dependent minor children from other marriages or relationships. (§ 4725, subds. (a), (b).)

The combined monthly net disposable income of both parents is then multiplied by a designated percentage factor based on the number of children. (§ 4722, subd. (b)(1).) If the resulting figure is at or greater than the AFDC standard for the same number of children, the court shall order a minimum award that equals the AFDC standard. (§ 4722, subd. (b)(3).) The AFDC standard is defined in section 4722, subdivision (c). This is the mandatory minimum award. (§ 4722, subd. (f).)

The amount each parent contributes to the mandatory minimum award is then determined by multiplying the minimum award by the proportionate share of the parents' contribution to their combined net disposable income. (§ 4722, subd. (d).) The court may award an amount in excess of the mandatory amount according to certain specified criteria and after considering the parents' standards of living. (§§ 4723, 4724, subd. (a).)

It is clear by comparing the statement of decision with both wife and husband's income and expense declarations that the trial court failed to apply the formula provided in the Agnos Act. Because the Legislature intended that a court depart from the principles of the act only in exceptional circumstances (§ 4720, subd. (e)), the case must be remanded as stated above.

 The trial court deducted the sum of $977 each month from husband's monthly net disposable income. Whether either or both of the components of this sum may be deducted properly under the Agnos Act is a

---

to accommodate those circumstances, in addition to the deductions specified in subdivision (c) of Section 4721.

"(a) Circumstances evidencing hardship include the extraordinary health expenses for which the parent is financially responsible, and uninsured catastrophic losses.

"(b) Circumstances evidencing hardship also include the minimum basic living expenses of either parent's dependent minor children from other marriages or relationships. The court, upon its own motion or upon the request of a party, may allow such income deductions as are necessary to accommodate these expenses.

"(c) If deductions for hardship expenses are allowed, the court shall state on the record the reasons supporting the deductions, cite the documentation of the underlying facts and circumstances, and specify the amount of deductions allowed. Whenever possible, the court shall specify the duration that any deduction shall be in effect.

"(d) Upon considering whether to allow a deduction under this section, and in determining the amount of any such deduction, the court shall be guided by the goals set forth in the expression of legislative intent set forth in this chapter.

"(e) The court shall not order a child support award that would reduce a parent's net income to an amount less than that established for the needs of one person by Section 11452 of the Welfare and Institutions Code, as annually adjusted by Section 11453 of that code."

matter upon which this court desires to give the trial court guidance. The trial court termed the sum an "extraordinary and hardship" expense; $577 of this sum was paid monthly to Leasing Unlimited and is related directly to the failed business called The Country Gourmet. The remaining $400 was to be paid monthly by husband to his mother on a loan he received from her.[3] Both the loan and the debts of The Country Gourmet (which was still operating at the time of the original property settlement) had been assumed by husband during the original division of community property and debts.

Wife challenges the trial court's decision to deduct these two sums arguing business losses do not constitute an extreme financial hardship as defined by section 4725.

Upon examination of section 4725 it becomes evident that if business losses are to be deducted under this section, they must be susceptible to a classification as "uninsured catastrophic losses." (§ 4725, subd. (a).)

■ When construing statutes, a court must first try to ascertain the intent of the Legislature in order to further the purpose of the law. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) However, the court must also try to interpret a statute according to the usual and ordinary meaning of the language used in framing it. (*Ibid.*) "Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (*Ibid.*) Whenever possible, a court should place significance on each word, phrase, and sentence used in an act pursuing a certain legislative purpose. (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) The words in the statute must be viewed in their proper context as part of the statute where they appear. (*Ibid.*) Furthermore, "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Ibid.*)

■ Although this court has been unable to locate any authority interpreting the term "uninsured catastrophic losses," it seems logical to conclude, based on ordinary interpretations of the word catastrophic,[4] that it would not include business losses.

---

[3] There is no indication in the record whether the loan from husband's mother is related to The Country Gourmet.

[4] Webster's New Collegiate Dictionary (8th ed. 1979) at page 173 defines "catastrophe" as: ". . . a momentous tragic event ranging from extreme misfortune to utter overthrow or ruin."

The stated legislative purpose of the Agnos Act is that "a system of standards and procedures shall be established which provide for a uniform determination of child support awards throughout the state." (§ 4720, subd. (d).) While the formula set out in the Agnos Act requires that a certain minimum award be achieved, the act also takes into consideration the financial abilities of each parent to provide support. (*Ibid.*) ". . . the Legislature recognizes that a parent's circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income; earning capacity; assets; and the income of his or her subsequent spouse or nonmarital partner, to the extent that the obligated parent's basic living expenses are met by the spouse or other person, thus increasing the parent's disposable income and therefore his or her ability to pay more than the mandatory minimum child support award established by this chapter. The court shall take into consideration the needs of the supported child or children in determining whether circumstances give rise to an increase or decrease in a child support award." (§ 4720, subd. (e).) To further this goal, child support awards are not based on gross incomes, but on net disposable incomes after a number of standard deductions are made. (§ 4721, subd. (c).) A court has the ability to award more than the mandatory minimum award so that children can share in their parents' higher standards of living. (§§ 4723, 4724, subd. (a).)

Consistent with the idea that child support awards be based on a parent's financial ability to pay, section 4725 provides for additional income deductions, separate from the standard deductions, to account for times when a parent suffers "extreme financial hardship." While section 4725 requires the court to remember the underlying goals of the Agnos Act, it also states that a court shall not order a child support award that would have the effect of reducing a parent's net income to an amount less than that established as the minimum necessary for a person under public assistance programs. (§ 4725, subd. (e).)

The formula provided in the Agnos Act under sections 4721 and 4722 makes no accommodation for the type of expense at issue here. Consequently, unless the debts from the failed business are classified as an "uninsured catastrophic loss," there is a possibility they will be left out of the calculation completely. This seems to go against the purpose of the Agnos Act which seeks to set child support awards according to accurate documentation of "a parent's circumstances and station in life." (See § 4720.)

However, when viewing section 4725 in isolation and applying the rules of statutory construction, another conclusion appears necessary. Section 4725 allows a deduction for extreme financial hardship when it is due to "justifiable expenses resulting from the circumstances enumerated in *this*

section." (Italics added.) It seems logical to conclude that the plain language of section 4725 limits the type of expenses that may be deducted as hardship expenses to those specifically enumerated within its provisions. Those circumstances do not include business losses specifically. This conclusion is further supported by the fact that at one point Assembly Bill No. 1527, which ultimately became the Agnos Act, specifically allowed deductions for business losses as evidence of extreme financial hardship. (See Assem. Bill No. 1527 original version and as amended July 11, 1983.) However, at a later point, business losses were deleted from the bill and the current language of section 4725 was amended in. (See Assem. Bill No. 1527 as amended May 1, 1984.)

Thus it appears the wording of section 4725 and its legislative history dictate that business losses cannot be classified as a type of extreme financial hardship, and the trial court cannot deduct them from husband's income under section 4725. Another option does exist, however. The trial court can recognize these losses by allowing for the losses when considering whether to grant more than the mandatory minimum child support award so that the children can share in their parent's standard of living. (§§ 4723, 4724, subd. (a).) The trial court may want to consider whether losses of this size lower husband's standard of living (§ 4725, subd. (e)), thereby affecting the amount of any increase in the child support award above the minimum award provided in section 4722.

■ Another problem regarding interpretation of the Agnos Act is evident when reviewing the court's statement of decision on the child support award. After adjusting the child support award for hardship expenses, the trial court reduced the award even further to account for the time the children would be with husband. The trial court did this by first calculating the percentage of time the children spent with each parent. It was determined the children were with husband 44 percent of the time. The court next multiplied the child support award ($784) by 44 percent. That figure ($344.96) was then subtracted from the $784 to reach the *actual* child support obligation ($439.04). Wife believes this method by which the award was reduced to account for shared custody was error. Wife raises a valid point.

Section 4727[5] of the Agnos Act authorizes the court, following a request, to consider any expenses or savings resulting from a shared custody ar-

---

[5] Section 4727 provides: "Except when a child or children are receiving an AFDC grant, upon request, the court may take into consideration expenses incurred and savings resulting from shared physical custody arrangements in determining the pro rata share of the mandatory minimum child support award to be allocated to each parent. For the purpose of this chapter, 'shared physical custody' means an arrangement in which the parents share physical

rangement when determining the "pro rata share of the mandatory minimum child support award" allocated to each parent. For purposes of the act, "shared physical custody" means an arrangement where each parent has custody more than 30 percent of the time. (§ 4727.)

When looking at the statute in isolation, the court's mathematical approach at implementation seems logical. When viewed as part of the entire act, however, the formula approach is improper.

Again, "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d 650, 659.) The purpose of the Agnos Act is to promote equitable, adequate child support awards. (§ 4720.) To this end, a very exact formula is provided for the computation of the minimum award. (§ 4721.) This formula designates what shall be deducted and what shall be added. The act also provides another formula for a court to use when determining whether, and how large a proportionate share of the minimum award, a parent can pay. (§ 4722.)

When compared to these structured and exacting methods of computation, interpretation of a provision which tells a court simply to "take into consideration" expenses and savings resulting from shared custody arrangements, requires a different approach.

Support for the conclusion the Legislature did not intend section 4727 to be applied so mechanically is found in the progress of the bill that eventually became the Agnos Act. The original version of the bill included a provision for the reduction of an award to account for shared custody arrangements. However, this provision was much more explicit in specifying how the award should be adjusted: "The court shall modify the amount each parent is required to pay toward the child support award based on the percentage of time those children covered by the support award are in the physical care of the parent. The percentage of time shall be determined by dividing the actual or anticipated number of days in a year the child is in the physical care of a parent by 365. If the percentage of time is equal to or less than 25 percent, no modification of that parent's support payment shall occur. If the percentage of time exceeds 25 percent, that parent's required support payment shall be reduced by the percentage of time factor, up to 50 percent. For the purposes of this section, no reduction greater than 50 percent shall be permitted." (Assem. Bill No. 1527 original version intro-

---

custody so that both have custody of the child or children more than 30 percent of a 365-day period."

duced Mar. 3, 1983.) By amendment this section of the bill was eliminated two months after the bill was introduced. (See Assem. Bill No. 1527 as amended May 5, 1983.) The present language of the statute did not appear in the bill until May 1, 1984, when the entire bill was rewritten. In two further amended versions of the bill, this language remained intact while other provisions were refined and clarified. For example, subdivision (g) of section 4722 was added the next time the bill was amended on June 21, 1984. Subdivision (g) sets out, in algebraic fashion, the formula expressed in section 4722. Furthermore, language amended into section 4721 dealt with additional factors that had to be considered when determining a minimum award. While the rest of the act was being refined in a mechanical manner that had the effect of taking more and more discretion away from the trial judge, the broad language of section 4727 was left alone.

It should be remembered the entire Agnos Act was embodied in Assembly Bill No. 1527. The various components of the act did not come from different legislative enactments. Consequently, we cannot attribute the use of different language or approaches to the fact they went through the legislative process at different times or were introduced by different legislators. Instead, it seems entirely consistent to conclude that if the Legislature intended section 4727 to be applied in a mechanical fashion, it would have phrased the statute in a manner similar to the formula approaches used in sections 4721 and 4722. Because the statute is not so phrased, it appears a mechanical application such as the one employed by the trial court in this case was not intended.

The next question, therefore, is how did the Legislature intend a trial court to apply section 4727? Since language employed in a statute should be given its usual and ordinary meaning, this should be done while considering the context in which the words are used in the statute. " 'If the words of a statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*California Teachers Assn.* v. *San Diego Community College Dist.*, *supra,* 28 Cal.3d 692, 698.)

The language of section 4727 instructs a trial judge in certain cases[6] following a request, to *consider* the expenses incurred and the savings resulting from a shared custody arrangement when determining the pro rata share of the mandatory minimum child support award. The ordinary import of this language provides a judge with some discretion to adjust awards to reflect how costs are being shouldered by each parent. It also provides a

---

[6] The provisions of section 4727 are available only to those parents who have physical custody of a child for more than 30 percent of the time.

vehicle by which a judge can ensure that an inequitable result does not occur from the purely mechanical calculation of the mandatory minimum award.

It appears in this case the trial court considered only the percentage of time the children were with each parent in applying section 4727. There is no indication respective expenses or savings were considered as section 4727 seems to require. The pleadings also fail to provide any information on these considerations. Consequently, there exists the danger the trial court improperly applied section 4727 in reducing husband's responsibility for child support purely on the basis of the amount of time the children were physically in his custody.

## III

### DID THE COURT ERR IN REDUCING THE SPOUSAL SUPPORT AWARD?

 Finally, wife contends the court erroneously modified the spousal support award. At the time of the original property settlement, husband agreed to pay $1,900 per month to wife. The modification petition resulted in the monthly award being reduced to $1,056.

 The trial court's findings will not be disturbed as long as there is substantial evidence supporting the order. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) If the appeal is based on the judgment roll only and there is no transcript, the appellate court must consider the issues on the basis of the pleadings. (*Marvin* v. *Marvin* (1981) 122 Cal.App.3d 871, 875 [176 Cal.Rptr. 555].)

 To obtain a modification of a previous spousal support order, the moving party must show a material change of circumstances since the time of the prior order. (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654].) The requirement of showing changed circumstances applies to stipulated agreements as well as litigated orders. (*In re Marriage of Hentz* (1976) 57 Cal.App.3d 899, 901-902 [129 Cal.Rptr. 678].) In this case, all we are presented with is the clerk's transcript consisting of the various pleadings and the court's rulings. A transcript of a hearing is not provided.[7] Consequently, we must look to the pleadings to determine whether the trial court was correct in reducing the amount of spousal support on the basis of changed circumstances.

---

[7] However, transcripts of earlier depositions of wife and husband have been made part of the record on appeal.

Ten months passed between the time of the original settlement agreement and the modification order. Although we are told husband's business, The Country Gourmet, failed, there is no indication from the record this had a substantial effect on his income. In fact, based on the income and expense declarations, husband seems to be in an even better position financially at the time of modification as opposed to the time the original order was entered.

Husband's original income and expense declaration shows he had a gross monthly income of $1,929.25. After deductions for taxes, husband's net monthly income was $755.38. Against this net income, husband had monthly expenses equaling $3,650.

Husband's income and expense declaration filed at the time he sought modification shows he had a gross monthly income of $6,235. After deductions for taxes, husband's net monthly income was $5,095. Against this figure, husband had monthly expenses equaling $4,221.

During this 10-month period, husband remarried. Consequently, his new wife, Cynthia, also filed an income and expense declaration. Her declaration showed a gross monthly income of $800, deductions of $220.50, and expenses of $995. The declaration also showed that $400 of the total expenses were being paid by husband.

When comparing husband's financial status at the beginning and the end of the 10-month period, it becomes evident he was in a better financial condition at the time he sought modification. This comparison does not supply substantial evidence that a change of circumstances justified modification of the spousal support award.

One possible source of support for the trial court's conclusion there was a change of circumstances may be found in a comparison of wife's financial status at the time of the original order and the modification. Wife's first income and expense declaration showed no source of income against $4,279 in monthly expenses. In contrast, at the time modification was being sought, wife's income and expense declaration showed net monthly income equaling $742 and expenses of $3,453. Wife not only is receiving income apart from husband's support payments, but her monthly expenses have been reduced by approximately $800. However, it should be noted the income of $742 is from a community property source that was awarded to wife in the property settlement, and for that reason should not be considered a change of circumstances. (See *In re Marriage of Kuppinger, supra,* 48 Cal.App.3d 628, 635.)

Husband may contend that the failure of The Country Gourmet was in itself a change of circumstances warranting a reevaluation of the support award. The argument may be that because the business has failed, income no longer comes in to offset the expense and that, therefore, he is left purely with a debt. However, the financial documentation does not demonstrate this failure affected husband adversely. Husband's original income and expense declaration shows he was losing approximately $3,156.75 monthly from the business. Husband's second income and expense declaration shows he was paying $977 monthly for the debts of The Country Gourmet. These figures lead to a conclusion husband's financial situation with regard to The Country Gourmet is better as a result of the business failing.

When explaining its award of child support in the statement of decision, the trial court included a portion of Cynthia Norvall's income in husband's income. The trial court did this by taking Cynthia's net income from her income and expense declaration, subtracting $300 from that amount, then dividing the total by two. This resulted in $139.75 being added to husband's net income. There is absolutely no support in the record for a $300 sum being subtracted from Cynthia's income. Although the calculation of Cynthia's contribution to husband's net income has specific application to the child support award, when considering the wording of the trial court's statement of decision, there exists the danger the unsupported calculation had an effect on the modification of the spousal support award. Of course, we must defer to a trial court's ruling and presume it was arrived at correctly when the record does not indicate otherwise. (See *Hall* v. *Municipal Court* (1974) 10 Cal.3d 641, 643 [111 Cal.Rptr. 721, 517 P.2d 1185].) However, given the fact the statement regarding modification of spousal support appeared at the end of a paragraph involving detailed explanations for the modification of child support, a strong inference is raised the same figures affected the court's determination on spousal support.

Finally, husband argues, at length, that pursuant to section 4801, the court was justified in reducing the support award. Section 4801 lists factors a court may consider when calculating an award of spousal support. Among these factors are the earning capacity of a spouse and his or her ability to engage in gainful employment. Husband notes wife's education and career skills are justification for the modification. However, this argument on these facts is inapplicable. Wife possessed these credentials at the time of the stipulated settlement agreement. Considering the failure of the stipulated agreement to address wife's ability to obtain employment in the future, the relatively short period of time between the original order and the modification petition, and the state of the record regarding wife's attempt to obtain employment, we cannot say this factor alone constitutes a change in

circumstances.[8] This is not to say wife is excused from seeking employment, or that her failure to do so cannot ever constitute a change of circumstances.

Unless we determine wife's slight change in her financial condition is sufficient evidence of the type of changed circumstances that must exist before a support order may be modified, it does not appear substantial evidence supports the court's decision to modify spousal support. We do not believe that change constituted substantial evidence.

Accordingly, we reverse and remand the case to the trial court for a redetermination of child support and spousal support in a manner consistent with language in this opinion.

Appellant shall have her costs on this appeal.

Woolpert, Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied June 30, 1987.

---

[8] Had the original support award been contested rather than stipulated to, the trial court properly could have considered these factors in arriving at an award. However, the agreement, which both parties stipulated to, failed to account for the effect these factors would have on the award in the future. Again, at this point, the court may not simply reevaluate the spousal support award. A change of circumstances must first be found.