[No. G040640. Fourth Dist., Div. Three. Aug. 3, 2009.]

In re the Marriage of LAURA B. and PARK E. DIETZ.
LAURA B. DIETZ, Appellant, v.
PARK E. DIETZ, Respondent.

**COUNSEL**

Law Offices of Marjorie G. Fuller and Marjorie G. Fuller for Appellant.

Martin & McCormick, John D. Martin and Kathy J. McCormick for Respondent.

## OPINION

FYBEL, J.—

## INTRODUCTION

Following the entry of the judgment dissolving their marriage, Park E. Dietz and Laura B. Dietz[1] entered into a stipulated judgment in 1999, in which they divided their community property, including their retirement accounts, and agreed Park would pay Laura monthly spousal support. In 2007, Park sought a court order terminating or, alternatively, reducing his spousal support obligation.

After the hearing, the trial court found that a material change of circumstances had occurred since the stipulated judgment because (1) Laura had reached an age at which she could access her share of the retirement accounts without penalty; and (2) she had realized appreciation in securities (securities) she owned.[2] The court ordered Park's monthly spousal support obligation be reduced, and denied Laura's request that Park contribute toward her attorney fees and costs.

Laura contends the trial court erred by reducing Park's spousal support obligation because no material change of circumstances had occurred to warrant such a modification. She also challenges the trial court's denial of her request for attorney fees and costs.

We reverse. As discussed in detail, *post*, the trial court erred by concluding the accessibility and increased value of the retirement accounts awarded to Laura in the stipulated judgment constituted a material change of circumstances justifying a decrease in Park's monthly spousal support obligation. The stipulated judgment expressly awarded Laura and Park equal shares of the retirement accounts and any increase in their values. Although Park's income had significantly increased and Laura remained unemployed since the stipulated judgment, the trial court reduced Park's monthly spousal support obligation based on the accessibility and value of the retirement accounts. We hold Laura's rights to access the retirement accounts on a penalty-free basis and to any increase in their values were insufficient, without more, to constitute a material change of circumstances permitting a reduction in her spousal support under Family Code section 4320. (All further statutory references are to the Family Code.)

---

[1] We use the parties' first names to avoid confusion and intend no disrespect. (*Nairne v. Jessop-Humblet* (2002) 101 Cal.App.4th 1124, 1126, fn. 1 [124 Cal.Rptr.2d 726].)

[2] As explained, *post*, it is unclear whether these securities were included in the stipulated judgment and we remand for determinations in this regard.

In determining whether to award attorney fees and costs in postdissolution proceedings, the trial court must consider " 'how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances.' " (*In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 933 [95 Cal.Rptr.2d 760].) The trial court did not order Park to pay any of Laura's attorney fees and costs because Park had sought the termination or reduction of spousal support in good faith and both parties had access to quality legal assistance. Because the court applied an incorrect standard in considering Laura's request for attorney fees and costs, we remand the matter to the trial court for reconsideration of Laura's request.

## BACKGROUND

### I.

#### JUDGMENT OF DISSOLUTION; 1999 STIPULATED JUDGMENT; 2002 STIPULATED JUDGMENT

Park and Laura were married in 1981 and separated in 1996. The judgment of dissolution of their marriage was entered in February 1998. In April 1999, Park and Laura agreed to a stipulated judgment as to reserved issues (the 1999 stipulated judgment), which addressed the joint custody of their then 16-year-old son, Park's support obligations, and the division of their community property.

As to Park's support obligations, the 1999 stipulated judgment stated Park "shall pay to [Laura], as and for spousal support, the sum of $16,500.00 per month . . . commencing October 1, 1998, and continuing thereafter until the death of [Laura], death of [Park], remarriage of [Laura], or further order of Court." The 1999 stipulated judgment also required Park to pay Laura $3,500 in monthly child support until their son "reaches 19, or reaches 18 and is not a full-time high school student residing with a parent, whichever occurs first." The 1999 stipulated judgment stated: "The support in this case was based upon [Laura]'s having no income, and [Park] having income in the sum of $87,721.00 per month."

As to the division of Park's and Laura's retirement accounts, the 1999 stipulated judgment stated, in part, that Park and Laura would each retain "[o]ne-half (1/2) the retirement plans earned by [Park] during marriage, including any and all contributions made up to the date of separation (Sept. 25, 1996), and any increase or decrease in value of such assets related to market conditions."

The 1999 stipulated judgment otherwise divided the parties' community property by awarding Laura (1) all of the miscellaneous furniture, furnishings, and appliances; (2) the sum of $3,000 reflecting Laura's interest in

Park's frequent flier miles; (3) two Mercedes automobiles; (4) a residence in Corona del Mar, subject to an encumbrance in the amount of $144,000; (5) an equalizing sum from the proceeds from the sale of another residence (Perham residence) in the amount of $992,454 "minus the net equity in the [Corona del Mar] residence";[3] (6) "[t]he distribution earlier received from the Fidelity Spartan Account, in the approximate sum of $160,000.00"; (7) "[t]he sum of $500.00 on account of an interest charge"; (8) Dell Computer stock valued at $900; and (9) two Fidelity Investments accounts and a mutual fund IRA.

The 1999 stipulated judgment awarded to Park: (1) "[m]iscellaneous antiquarian books in a collection, with a stipulated value of $8,650.00"; (2) miscellaneous personal property having a value of $45,420; (3) "[m]iscellaneous furniture, furnishings and appliances" in Park's possession, valued at $1,095; (4) all of the frequent flier miles and hotel points acquired by Park during and after the marriage; (5) the "[b]usiness consisting of a corporation known as 'Threat Assessment Group, Inc.' "; (6) the "[p]rofessional practice consisting of a corporation known as 'Park Dietz and Associates, Inc.' ";[4] (7) "[t]he distribution earlier received from the Fidelity Spartan Account, in the approximate sum of $160,000.00"; (8) a Fidelity blue chip growth IRA account; and (9) an equal share of the proceeds from the sale of the Perham residence after the equalizing payment, described *ante,* was made to Laura.

In October 2002, Park and Laura entered into a stipulation to modify the 1999 stipulated judgment by striking its references to Laura's award of the Fidelity Investments accounts and a mutual fund IRA and Park's Fidelity blue chip growth IRA account. The parties further stipulated to modify the portions of the 1999 stipulated judgment addressing the division of certain retirement accounts to state, as modified, the following: "Each party is awarded one-half of the community interest in the retirement plans accumulated by the parties during the marriage, including any and all contributions made from May 11, 1980 up to September 25, 1996 and any increase or decrease in value of such assets related to market conditions. Any contributions made by either party before May 11, 1980 and/or subsequent to September 25, 1996 (and any earnings/losses on such contributions) shall be deemed to be the sole and separate property of the party who has made the contribution. . . . Such retirement plans will be divided pursuant to Qualified Domestic Relations Orders. Each party shall pay his/her own attorney's fees related to the preparation of such Qualified Domestic Relations

---

[3] The 1999 stipulated judgment provided that the balance of the proceeds from the sale of the Perham residence after this payment to Laura "shall be divided equally" between Laura and Park.

[4] The 1999 stipulated judgment stated the two businesses awarded to Park had "a stipulated value of $1,000,000.00."

Orders." The stipulation's modified language further stated, "[s]aid retirement plans consist of" (1) TIAA-CREF retirement annuities, (2) a Vanguard plan account, (3) certain Fidelity Keogh brokerage accounts, (4) a Fidelity Investments mutual fund IRA account, (5) a Fidelity Investments brokerage Keogh profit-sharing account, and (6) a Fidelity IRA account. The stipulation to modify the 1999 stipulated judgment was accepted by the trial court.

## II.

### Laura's Order to Show Cause Seeking Division of Parties' Retirement Accounts; Park's Order to Show Cause Seeking Termination or Reduction of Spousal Support Obligation

In May 2007, Laura filed an order to show cause seeking the actual division of the parties' retirement accounts. Laura contended, "[f]or several years I have been trying to get [Park] to divide our pension assets. He refuses to do so." Park filed a responsive declaration stating his agreement to an order effecting the immediate division of the retirement accounts and requiring Laura's counsel to obtain the financial records necessary for the division.

In August 2007, Park filed an order to show cause seeking the termination of his spousal support obligation under the 1999 stipulated judgment. Park sought alternative relief, as follows: "If the Court is not inclined to immediately terminate spousal support, then [Park] requests that the Court [e]stablish a hearing and discovery schedule so that this matter may be heard on an expedited basis, and to include live testimony; or, in the alternative, Order a 'step down' schedule that forces [Laura] to begin supporting herself based on her earning capacity and takes into account her income from assets and other investments, with an ultimate termination of spousal support."

## III.

### Hearing

The hearing on the orders to show cause took place in May 2008. At the beginning of the hearing, Park and Laura agreed to the entry of another stipulated judgment which resolved the issue of their undivided retirement accounts as follows: "Investment accounts standing in the name of Park Elliot Dietz, MD, at Fidelity Investments . . . shall be awarded to Laura B. Dietz as a full and final community property distribution of the community assets held by the parties during their marriage." The 2008 stipulated judgment further stated, "[t]hese distributions of investment/retirement accounts [are] intended to be a tax free transfer of jointly owned assets to Petitioner, Laura Dietz[,] incident to the Judgment of Dissolution and Judgment on Reserved Issues

dated April 29, 1999 and October 21, 2002 respect[ive]ly." Finally, it stated, "[t]he parties agree that with the entry of this judgment, there are no assets that remain undivided and neither party has any unresolved claims against the other regarding asset division."

The hearing resumed to resolve the sole remaining issue—whether Park's spousal support obligation should be terminated or reduced. Laura testified she was 62 years old. She testified that during the marriage she had worked for Park's two businesses handling administrative matters. She has not been employed since 1995. In 2000, Laura began suffering from symptoms of a respiratory illness that was diagnosed in 2005 as allergic bronchopulmonary aspergillosis; she had contracted the illness through the presence of fungus in the Corona del Mar residence that she had been awarded in the 1999 stipulated judgment. Laura used money she had inherited from her mother toward the cost of remediating and renovating that residence. She also testified it was not medically advisable for her to go back to work.

Park testified he was a 59-year-old forensic psychiatrist.[5] He acknowledged he earned 50 percent more in 2007 than he had earned in 1998. Park stated, "I would agree that it would appear that I have more than enough to pay [Laura] spousal support."

### IV.

#### TRIAL COURT ORDERS SPOUSAL SUPPORT REDUCED; LAURA APPEALS

Following the hearing, the court initially stated, "at first glance the circumstances really don't seem to be that much different from what they were in 1999 when the prior support order was entered." The court, however, explained it had found a material change of circumstances justifying a reexamination of the spousal support because (1) based on a comparison of Laura's income and expense declarations for May 2007 and May 2008, her marketable securities investment account increased by about $220,000; and (2) "she has recently been allocated approximately $500,000 in retirement assets" and "she has reached the age at which she can begin to use that retirement asset without penalty" to provide for her support.[6]

The trial court further stated it considered whether to terminate or modify Park's spousal support obligation by reweighing the factors set forth in section

---

[5] Park testified he would turn 60 years old in August 2008, so he was older than 59½ at the time of the hearing.

[6] Federal and state laws regulating retirement accounts "provide that contributions to such plans within specified limits are tax deductible, and they penalize withdrawals from such plans prior to the participant's reaching age 59½." (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 11 [17 Cal.Rptr.2d 480], fn. omitted.)

4320 to determine a "just and reasonable result under the facts and circumstances of this case." The court concluded that some of the relevant factors "militate strongly in [Park]'s favor" in that Laura "has substantial assets. To put it simply, she is a wealthy woman. She has not less than $4 million in assets, including a $2.7 million un[e]ncumbered residence, $800,000 in marketable securities, and $500,000 in retirement assets. . . . [¶] Although . . . only $1.3 million is liquid." The court stated Laura's substantial retirement assets were now accessible to her without penalty. Although the court noted undisputed evidence that Laura was unable to work due to her health condition, it also stated, "[g]iven her assets, one could certainly conclude that she has every ability to be self-sufficient, even without going out into the workforce. Certainly, with $4 million—not less than a $4 million estate—normally one would be expected to be self-sufficient, even if he or she were unable to work in the normal sense." The court found that Laura's needs were not greater at the time of trial than they were at the time the 1999 stipulated judgment was entered.

In Laura's favor, the court found the marriage was a long-term marriage of approximately 15 years; "the parties achieved an upper marital standard of living during the marriage"; Laura was "entitled, if the assets are available, to maintain the marital standard of living post dissolution"; and "clearly, between the parties there are sufficient assets for both parties to maintain the marital standard of living post dissolution, now and into the foreseeable future." The court also found Park's income had increased since the 1999 stipulated judgment, and Park enjoyed "substantial tax savings as a result of the spousal support, because it is deductible from gross income."

Having concluded Laura was "more than able to maintain the marital standard of living with less than the $16,500 per month in spousal support that she has been receiving for the last several years," the trial court turned to the question of "[w]hat reduction is appropriate?"[7]

The court stated, "[i]n looking at just her increase since the date of judgment, that increase is not less than $720,000; $220,000 in marketable securities, $500,000 in retirement assets. If one were to infer a reasonable return of 5 percent, that would yield $36,000 in income without invading the princip[al]. That, of course, is $3,000 a month." The court ordered Park's monthly spousal support obligation be reduced by $3,000 effective June 1, 2008, which the court concluded, "need not have any effect on [Laura]'s ability to maintain the marital standard of living."

The trial court also denied Laura's request that Park pay her attorney fees and costs under section 2030, stating, "[b]oth parties here have equal access

---

[7] For reasons we explain, *post,* the trial court rejected Park's proposal that the court issue a stepdown order gradually reducing spousal support over time.

to quality legal services. The order to show cause re termination or reduction in spousal support was appropriate. It was brought in good faith. It was earnest. There just isn't any reason here to shift the burden of the attorney's fees."

Laura appealed.

## DISCUSSION

### I.

#### WE REVERSE THE TRIAL COURT'S ORDER REDUCING SPOUSAL SUPPORT.

Laura contends the trial court erred by reducing Park's monthly spousal support obligation because there had been no material change of circumstances since the 1999 stipulated judgment to warrant such a reduction. We conclude the trial court erred by reducing spousal support.

#### A.

*General Legal Principles Governing Modifications of Spousal Support*

■ "Modification of spousal support, even if the prior amount is established by agreement, requires a material change of circumstances since the last order. [Citations.] Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. [Citations.] It includes all factors affecting need and the ability to pay." (*In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982 [48 Cal.Rptr.2d 864].) "A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 247 [60 Cal.Rptr.3d 858].)

Section 4320 provides:

"In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) Documented evidence of any history of domestic violence . . . .

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

"(l) The goal that the supported party shall be self-supporting within a reasonable period of time. . . .

"(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4325.

"(n) Any other factors the court determines are just and equitable."

## B.

*Standard of Review*

"Appellate review of orders modifying spousal support is governed by an abuse of discretion standard, and such an abuse occurs when a court modifies a support order without substantial evidence of a material change of circumstances." (*In re Marriage of McCann, supra,* 41 Cal.App.4th at pp. 982–983; see *In re Marriage of West, supra,* 152 Cal.App.4th at p. 246 ["A spousal support order is modifiable only upon a material change of circumstances since the last order," and "[w]here there is no substantial evidence of a material change of circumstances, an order modifying a support order will be overturned for abuse of discretion"]; *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480 [274 Cal.Rptr. 911] ["Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order."].) " 'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it.' " (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412 [6 Cal.Rptr.2d 791].)

## C.

*The Trial Court Was Bound to Give Effect to the Parties'*
*Intent and Reasonable Expectations As Expressed in the*
*1999 Stipulated Judgment.*

█ "[A] marital settlement agreement is a contract between the parties. [Citations.] Where the agreement permits modifications, those modifications require a showing of a change in circumstances. [Citations.] Moreover, in determining what constitutes a change in circumstances the trial court is bound to give effect to the intent and reasonable expectations of the parties as expressed in the agreement," and, thus, "the trial court's discretion to modify the spousal support order is constrained by the terms of the marital settlement agreement." (*In re Marriage of Aninger* (1990) 220 Cal.App.3d 230, 238 [269 Cal.Rptr. 388].) In *In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1061 [237 Cal.Rptr. 770], the appellate court held that evidence of income produced from a community property source awarded to the wife in a stipulated settlement agreement did not constitute substantial evidence of a material change of circumstances to justify a reduction in the husband's spousal support obligation.

Similarly, in *In re Marriage of Rabkin* (1986) 179 Cal.App.3d 1071, 1081 [225 Cal.Rptr. 219], the appellate court reversed an order reducing the

husband's spousal support obligation, stating in part: "We have concluded that none of these factors furnished a proper basis for the trial court's $250 per month reduction in wife's permanent spousal support. As for the sale of the family residence and wife's resulting right to receive approximately $1,800 in monthly mortgage payments, such right constituted the single major asset awarded to wife as her one-half share of the community property. The parties' agreement, which was very carefully drafted by skilled attorneys, provided that wife would receive her share of the community property *and* spousal support. It makes no more sense to reduce wife's spousal support because she received her rightful share of the community property than it would to increase wife's spousal support because husband received his rightful share of the community property. (In fact, husband testified . . . that his pension plan, which was allegedly worth $175,000 on the date of separation, was now worth between $260,000 and $270,000.)"

Here, the 1999 stipulated judgment constituted a similar marital settlement agreement. Thus, in determining whether a material change of circumstances had occurred, necessary to support a modification of Park's spousal support obligation, the trial court was required to "give effect to" Park's and Laura's "intent and reasonable expectations . . . as expressed in the agreement." (*In re Marriage of Aninger, supra,* 220 Cal.App.3d at p. 238.)

The 1999 stipulated judgment reflects Park and Laura's bargained-for exchange through which they agreed how they would divide their assets, including their community property interests in the retirement accounts. The stipulated judgment *expressly* acknowledges Park and Laura's expectations that the value of the subject retirement accounts might increase, stating that each party would receive one-half of the community property interest in the retirement accounts, "including any and all contributions made up to the date of separation (Sept. 25, 1996), *and any increase or decrease in value of such assets related to market conditions.*" (Italics added.) The 2002 stipulated judgment, which modified portions of the 1999 stipulated judgment, again expressly stated that each party was awarded one-half of the community property interest in the retirement accounts and retained the language, "including . . . any increase or decrease in value of such assets related to market conditions." Necessarily included in this express division of the retirement accounts was the parties' reasonable expectations that they both would reach the age at which they could access such accounts without a penalty.[8]

---

[8] Indeed, based on the parties' ages at the time of the May 2008 hearing (Laura was 62 years old and Park was about to turn 60 years old), neither Laura nor Park was that far away from reaching 59½ years of age at the time they signed the 1999 stipulated judgment in April 1999 and the 2002 stipulated judgment in late 2002.

The 1999 stipulated judgment also reflects the parties' expectations as to spousal support. They agreed Park would pay Laura $16,500 in monthly spousal support until Park's death, Laura's death, Laura's remarriage, or by further order of the court. The 1999 stipulated judgment further stated, "[t]he support in this case was based upon [Laura]'s having no income, and [Park] having income in the sum of $87,721.00 per month." The 1999 stipulated judgment did not in any way suggest the parties expected that spousal support, or any modification thereof, would be based on the value of the parties' community property assets divided therein.

In light of the parties' reasonable expectations as expressed in the 1999 stipulated judgment (and reiterated in the 2002 stipulated judgment), we turn to consider whether a material change of circumstance surfaced to support the reduction of Park's spousal support obligation. The trial court concluded a material change of circumstances had occurred because Laura's share of the community property interest in the retirement accounts was now accessible to her without penalty and was valued at $500,000, and Laura owned securities that had increased in value by $220,000.

But as discussed *ante*, the accessibility and possible increase in value of Laura's share of the retirement accounts were part of the parties' expressed reasonable expectations in entering the 1999 stipulated judgment and cannot constitute a material change of circumstances on these facts. The 1999 stipulated judgment provided that Laura would receive half of the community property interest in the retirement accounts *and* spousal support, and further expressly stated spousal support was based on the parties' respective incomes. It is undisputed Park's income had significantly increased since the 1999 stipulated judgment and Laura was unable to work due to her medical condition.

Furthermore, the record shows Laura and Park actually divided their interest in the retirement accounts at the hearing in this case and each received an equal interest valued at $500,000 in retirement accounts at that time. Park testified that, given his ability to pay, he would have no problem paying the agreed-upon, existing spousal support. On these facts, the trial court's conclusion that a material change of circumstances had occurred, based on the accessibility and value of Laura's share of the retirement accounts constituted error. (Accord, *In re Marriage of Norvall, supra*, 192 Cal.App.3d 1047, 1061; *In re Marriage of Rabkin, supra*, 179 Cal.App.3d 1071, 1081.)

As to the trial court's finding that a material change of circumstances had occurred based on the appreciation of Laura's securities, the record is unclear whether Laura was awarded those securities through the 1999 stipulated

judgment. (In the opening brief, Laura contends the securities were part of the 1999 stipulated judgment, and Park does not refute this assertion in the respondent's brief.) If Laura was awarded the securities in the 1999 stipulated judgment as part of her share of the community property assets through the parties' bargained-for exchange, the appreciation of such securities would be within the parties' reasonable expectations in entering into the 1999 stipulated judgment. Because the record is unclear whether the securities were part of the stipulated judgment, we remand to the trial court to determine whether the securities were awarded through the 1999 stipulated judgment, and if so, to apply the same standards explained, *ante*. If the trial court concludes those securities were not awarded to Laura through the 1999 stipulated judgment, the court may reconsider whether a material change of circumstances sufficient to justify a reduction in spousal support has occurred.

### D.

*The Trial Court's Consideration of the Factors Set Forth in Section 4320 in Determining Whether to Reduce Spousal Support Did Not Support a Reduction of Spousal Support.*

In the respondent's brief, Park argues the trial court did not rely solely on the accessibility and value of the retirement accounts in determining that a change of circumstances had occurred, but reached that conclusion only after it "undertook the required reweighing of the [section] 4320 factors." As we will explain, the record does not contain evidence supporting any factor that shows a material change of circumstances had occurred that would warrant depriving Laura of the benefit of the bargain she made with Park in the 1999 stipulated judgment.

After concluding a material change of circumstances had occurred, based on the accessibility and value of the retirement accounts and the appreciation of the securities Laura owned, the trial court considered whether a reduction in spousal support would be appropriate by reweighing the factors set forth in section 4320. The trial court did not consider factors that "ha[d] no relevant evidence in this record and so can't be specifically factored into the analysis."

The trial court considered that the parties' marriage "was a long-term marriage of approximately 15 years." (See § 4320, subd. (f) [duration of marriage].) The court found Laura's testimony about her health condition and her inability to work was unrebutted. Thus, factors involving her earning capacity, marketable skills, and any expectation of her becoming self-supporting within a reasonable period of time through employment did not support a reduction in spousal support. (See § 4320, subds. (a), (*l*).) Although Laura inherited about $400,000 from her mother after the 1999

stipulated judgment, that money had been used to substantially renovate the Corona del Mar residence after the discovery of a mold infestation and was not available to use for her support. (See § 4320, subd. (e).) No evidence was presented showing that Laura had received any other separate property after the parties agreed to the 1999 stipulated judgment.

The trial court also observed the parties had achieved an "upper" marital standard of living during the marriage, and "between the parties there are sufficient assets for both parties to maintain the marital standard of living post dissolution, now and into the foreseeable future." Indeed, the trial court found Park's monthly income had increased by about 28 percent since the 1999 stipulated judgment. (See § 4320, subd. (c) [supporting spouse's ability to pay spousal support].) The court found that Park "does enjoy substantial tax savings as a result of the spousal support, because it is deductible from gross income." (See § 4320, subd. (j).)

As to Laura's obligations and assets (§ 4320, subd. (e)), the trial court found the majority of Laura's assets, namely, the family residence, were "illiquid" and further found that Laura had not mismanaged her assets. As to Laura's needs (§ 4320, subd. (d)), the court stated Laura's "needs today are no greater than they were at the time of the judgment in order for her to maintain the marital standard of living." Although the court did not find Laura's needs had decreased, the trial court commented, "[i]t could be argued, and, in fact, [Park] did argue persuasively that her needs may be somewhat less, because her only child has now reached the age of majority, has concluded his education, and is self-supporting." But no evidence was presented showing to what extent Laura's need for spousal support might have decreased after their son reached the age of majority and Park's $3,500 monthly child support obligation had terminated. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2009) ¶ 17:150.4, pp. 17-34 to 17-35 (rev. # 1, 2008) [stating "[a] custodial parent is commonly awarded lower spousal support in exchange for higher child support"].) As the court did not rely on a decrease in Laura's needs as a factor for reducing spousal support, we do not further address it.

■   The key finding the trial court relied on in balancing the section 4320 factors was the same finding the court initially relied upon in determining that a material change of circumstances had occurred in the first place—that Laura, given the assets she was provided in the 1999 stipulated judgment, and the accessibility and appreciation of such assets since the 1999 stipulated judgment, should be expected to be more self-sufficient. As discussed, *ante*, the court's conclusion that a material change of circumstances occurred based on this finding, without more, was erroneous. The court's reliance on this finding is further illustrated by its calculation of the reduction of Park's

spousal support obligation. In so calculating the spousal support obligation, the trial court (1) added the value of Laura's share of the community property interest in the retirement accounts ($500,000) to the amount her share of the securities had appreciated ($220,000) for a total of $720,000; (2) imputed a "reasonable return of 5 percent" on the $720,000 "that would yield $36,000 in income without invading the princip[al]"; and (3) divided the $36,000 by 12 months to determine that spousal support should be reduced by $3,000 per month.

Furthermore, no evidence was presented at the hearing to support the trial court's decision to impute a 5 percent return on those assets. In rejecting Park's request that the trial court gradually terminate spousal support through a stepdown order, the court acknowledged the dearth of evidence on this point, stating: "There was no evidence given with respect to the return that one could expect to achieve on the retirement account; the rate at which one would be expected, given [Laura]'s age and other factors, to use that asset; how long it could be expected to last; what would be a reasonable amount for her to withdraw based upon actuarial data and so on. [¶] So there is no record here based upon which the court could conclude any particular schedule on which she would use her retirement assets and enable the court to make an order stepping down spousal support in the future. So I'm not going to do that." (See *In re Marriage of Kennedy* (1987) 193 Cal.App.3d 1633, 1641 [239 Cal.Rptr. 151] [the court may not ascribe an arbitrary and theoretical rate of return on assets].)

Thus, the trial court's order reducing Park's spousal support obligation, based on its consideration of the section 4320 factors on this record, constituted error.

### E.

#### *In re Marriage of Schmir*

The trial court stated it heavily relied on *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43 [35 Cal.Rptr.3d 716] (*Schmir*), stating that case "really does seem to be directly on point here."[9] In *Schmir*, the trial court found three material changes of circumstances had occurred since the parties entered a marital settlement agreement requiring the husband to pay $5,800 in

[9] In the opening brief, Laura cites an opinion that has not been certified for publication in which an appellate court distinguished *Schmir, supra*, 134 Cal.App.4th 43. Laura's citation to this unpublished opinion violated rule 8.1115(a) of the California Rules of Court, which states: "[A]n opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action."

monthly spousal support: (1) the wife was "presently employable as a licensed clinical social worker"; (2) the wife's monthly medical expenses had decreased from $2,000 to $500; and (3) the wife was eligible to withdraw funds from her retirement account without penalty. (134 Cal.App.4th at pp. 46–47.)

The wife in *Schmir, supra,* 134 Cal.App.4th at page 51, argued on appeal, inter alia, that "her ability to make penalty-free withdrawals from her retirement account is not a change in circumstances because the parties must have contemplated when they entered into their support agreement in 1989 [the wife] would reach the age when she could begin making withdrawals from the account without penalty. Therefore her reaching the requisite age is not a *change* in circumstance but merely an aspect of the same circumstance existing at the time of the original support order in 1989." (Fn. omitted.) The appellate court rejected the wife's argument, stating, "[a]dopting [the wife]'s line of reasoning would mean that as a matter of law the support*ing* spouse's attainment of retirement age could never constitute a change of circumstance for purposes of a motion to modify a support order." (*Ibid.,* italics added.) Citing *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, 1379 [74 Cal.Rptr.2d 636],[10] and the cases cited therein, the appellate court stated: "Numerous appellate court decisions have rejected such a result even though the parties in those cases clearly contemplated the supporting spouse would one day reach the age when he or she could legitimately retire." (*Schmir, supra,* 134 Cal.App.4th at p. 51.)

█ We agree with *Schmir* that a supporting spouse's attainment of retirement age may constitute a material change of circumstances for purposes of a motion to modify a support order, depending on the circumstances of a given case. The loss of income as a result of a supporting spouse's retirement at an appropriate age[11] might be such a case. We do not agree, however, that such a proposition establishes as a matter of law that a support*ed* spouse's attainment of the age by which retirement accounts divided in a marital settlement agreement might be accessed without penalty automatically constitutes a material change of circumstances.

As discussed, *ante,* here, the parties agreed to an equal division of their community property interest in the retirement accounts, providing each with

---

[10] In *In re Marriage of Reynolds, supra,* 63 Cal.App.4th at page 1379, the appellate court stated, "in the instance of a bona fide retirement, a supporting spouse should not be forced to continue working. Under those circumstances, the trial court may determine that there has been a material change in circumstances to justify a modification of support." The *Reynolds* court held that the trial court abused its discretion by "refus[ing] to recognize the effect of Husband's retirement and incorrectly applied a 'capacity to earn' standard." (*Ibid.*)

[11] "The courts have also held that a supporting spouse cannot retire prematurely in order to avoid paying spousal support." (*In re Marriage of Reynolds, supra,* 63 Cal.App.4th at p. 1379.)

$500,000 in retirement assets. As of the time of the hearing, both parties had reached the age by which they could access the retirement accounts without penalty. The parties bargained for the equal division of their retirement accounts in the 1999 stipulated judgment with the expectation that they each would be able to access the retirement accounts without penalty at 59½ years old.

We acknowledge that there might be a case where the trial court could properly exercise its discretion to impute reasonable withdrawals from retirement accounts as additional income for purposes of modifying spousal support. For example, in *In re Marriage of Olson, supra*, 14 Cal.App.4th at page 13, the appellate court stated in dicta: "[D]uring the timeframe within which a participant has the option to draw funds from the retirement plan without penalty, that is between ages 59½ and 70½, but is choosing not to do so, the court should have discretion as to whether or not to impute reasonable withdrawals as additional income for purposes of fixing spousal support, but should do so weighing the public policy favoring provision for one's retirement by allowing funds in the plan to accrue tax free, against all other circumstances in the case. This is especially pertinent where, as here, it would appear that the payor will soon retire at which time his ability to pay spousal support will be based upon income which, for the most part, will be produced by his retirement plans."

This is not such a case. Spousal support was never determined based in any way on income Park might have derived from his share of the retirement accounts. Park acknowledged he had sufficient resources to satisfy his spousal support obligation.

Because the trial court's order reducing Park's monthly spousal support obligation was not supported by substantial evidence of a material change of circumstances, we reverse.

II.

### WE REMAND FOR THE TRIAL COURT TO RECONSIDER LAURA'S REQUEST FOR ATTORNEY FEES AND COSTS.

Laura argues, "[t]he trial court erred in refusing to order Park to pay a contributive share of Laura's attorney fees, based on their relative circumstances." As discussed, *post*, because the trial court applied an incorrect standard in refusing to make such an order, we remand to the trial court for reconsideration of Laura's request.

"The trial court may in its discretion award fees or costs reasonably necessary to maintain or defend any proceeding occurring after entry of

judgment. [Citation.] The trial court is to decide 'what is just and reasonable under the relative circumstances' [citation], taking into consideration 'the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately . . . . The fact that the party requesting an award of attorney's fees and costs has resources . . . is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances' [citation]." (*In re Marriage of Terry, supra,* 80 Cal.App.4th at p. 933.) "In assessing the applicant's relative 'need' and the other party's ability to pay, the court may take into account 'all evidence concerning the parties' current incomes, assets, and abilities, including investment and income-producing properties.' " (*Ibid.*) In *In re Marriage of Terry,* the appellate court held, "[i]n light of the fact that [the wife] is by far the wealthier spouse, the trial court did not abuse its discretion in denying her fees." (*Ibid.*)

" '[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.] In the absence of a clear showing of abuse, its determination will not be disturbed on appeal.' [Citation.] Thus, we affirm the court's order unless ' "no judge could reasonably make the order made. [Citations.]" ' " (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 631 [108 Cal.Rptr.2d 833].)

Here, the trial court stated it "finds that there is no need . . . for [Park] to pay any portion of [Laura's] attorney's fees. Both parties here have equal access to quality legal services. The order to show cause re termination or reduction in spousal support was appropriate. It was brought in good faith. It was earnest. There just isn't any reason here to shift the burden of the attorney's fees."

■ The proper legal standard for determining whether to award attorney fees in such proceedings is not whether the proceedings were brought in good faith or in earnest, or even whether the party requesting attorney fees and costs had resources to pay attorney fees without considering other factors. (*In re Marriage of Terry, supra,* 80 Cal.App.4th at p. 933.) Instead, the trial court is required to determine how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances. (*Ibid.*) We therefore remand the matter to the trial court to reconsider Laura's request for attorney fees and costs under the standard set forth, *ante.* We express no opinion on what conclusion the trial court should reach after applying the proper standard on remand.

## DISPOSITION

The postjudgment order reducing Park's monthly spousal support obligation is reversed. With respect to any securities not in the retirement accounts, the trial court is to determine whether there is any material change of circumstances consistent with the views explained in this opinion. On remand, the trial court shall also reconsider Laura's request for attorney fees and costs under the standard set forth, *ante*, in part II of the Discussion. Laura shall recover costs on appeal.

O'Leary, Acting P. J., and Aronson, J., concurred.

On September 2, 2009, the opinion was modified to read as printed above.