Filed 6/17/13  Marriage of Bazar and Shorr CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of RENEE BAZAR and ALAN SHORR. | B239592 |
| | (Los Angeles County Super. Ct. No. BD458883) |
| RENEE M. BAZAR, Appellant, v. ALAN SHORR, Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle Court, Judge.  Reversed and remanded.

Renee M. Bazar, in pro. per., for Appellant.

Klopert & Ravden, Scott Klopert; Alan Shorr, in pro. per., for Respondent.

_____

Renee M. Bazar (formerly Shorr) appeals from an order modifying the spousal support established in a marital settlement agreement following dissolution of her marriage to Alan Shorr. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Previous Proceedings*

In January 2007 Renee[1] petitioned for dissolution of her nearly 19-year marriage to Alan. On June 3, 2008 the superior court entered a judgment of dissolution, status only, pursuant to Family Code section 2337, subdivision (a).[2] On September 15, 2008 Renee obtained a temporary spousal support order of $8,120 per month.

On January 5, 2010 the parties entered into a marital settlement agreement (MSA) that reduced Renee's spousal support to $5,500 per month "until the death of either party, remarriage of Renee or further order of court." The MSA's support provision contained a *Gavron* admonition pursuant to section 4330, subdivision (b). (See *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 711-712.) The case was set for trial on Alan's breach of fiduciary duty claim and the remaining property issues.

On January 6, 2011, the day scheduled for trial, Renee failed to appear and did not notify the court of the reason for her absence. Alan proceeded with his case. Based on the evidence he presented, the court awarded Alan $600,000 in damages arising from Renee's breach of fiduciary duty and ordered Renee to reimburse Alan for certain expenditures. Judgment on the reserved issues was entered on February 7, 2011.

On March 2, 2011 Renee moved to strike or set aside the judgment on the ground the court lacked jurisdiction because there had been no final appellate ruling on her writ petition seeking to disqualify the trial judge (Hon. Mark Juhas). She failed to appear at the April 11, 2011 hearing on her motion, and it was denied. Renee appealed from the

---

[1]  Although Renee and Alan no longer share the same last name, the matter was filed under Renee's married name. Accordingly, we refer to them by their first names for convenience and clarity. (See *Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1.)

[2]  Statutory references are to the Family Code unless otherwise specified.

2

judgment; we affirmed.  (See *In re Marriage of Shorr* (Mar. 20, 2013, B232176) [nonpub.] (*Shorr I*).)

2. *The Instant Appeal*

Although the issue of spousal support had been settled as part of the MSA, neither party moved to confirm the settlement under Code of Civil Procedure section 664.6; and it was not mentioned in the judgment entered after trial.  Alan moved to confirm the terms of the MSA on March 14, 2011, but the motion was not heard until August 24, 2011, well after Renee had appealed the judgment.  Judge Juhas declined to rule on the motion pending resolution of Renee's appeal, which, among other issues, sought review of her motion to disqualify him.

On October 14, 2011 Alan filed a request for an order to show cause seeking to reduce his spousal support obligation to $1,881 per month based on his lower income. On December 19, 2011 Judge Juhas declined to modify support based on Alan's inadequate showing under section 4320 but advised Alan he could supplement his declaration and retain the initial filing date.  (See § 4333.)  Renee requested the hearing be set far enough in the future to allow her to reopen discovery on Alan's showing of reduced income.  Based on Alan's offer to submit a supplemental declaration by December 23, 2011, Judge Juhas set the hearing for March 1, 2012.

Alan filed his supplemental declaration, including an income and expense declaration, on January 26, 2012.  Based on his reduced income since execution of the MSA and a current DissoMaster calculation,[3] Alan sought reduction of his monthly spousal support obligation to $642.  On February 15, 2012 Renee filed a responsive declaration opposing modification of spousal support on the ground Alan had failed to file his supplemental declaration within the time limit imposed by the court and requesting his declaration be stricken.

_____

[3]     DissoMaster is a computer software program widely used by courts and the family law bar for assistance in setting child support and temporary spousal support.  (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5, fn. 3; *In re Marriage of Zywiciel* (2000) 83 Cal.App.4th 1078, 1080.)

3

The March 1, 2012 hearing proceeded before Judge Michelle Court, who was new to the case. Based on the pending motion to confirm the terms of the MSA, Judge Court agreed with Alan's counsel to treat the request as a pendente lite, temporary support proceeding. Judge Court granted the request for modification retroactive to October 15, 2011 and directed Alan's counsel to prepare a statement of decision as requested by Renee.

Renee filed a notice of appeal on March 2, 2012. Alan's counsel submitted an order, signed by the court on March 27, 2012, and a statement of decision, signed on April 3, 2012. Renee submitted objections to the statement of decision on April 10, 2012, including, for the first time, an objection the motion had sought modification of a long-term spousal support agreement and the court improperly failed to consider the factors set forth in section 4320.

## DISCUSSION

1. *Standard of Review*

A support order may be modified only if the moving party demonstrates "a material change of circumstances since the last order. 'Change of circumstances' means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. It includes all factors affecting need and the ability to pay." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246 (*West*); accord, *In re Marriage of Khera and Sameer* (2012) 206 Cal.App.4th 1467, 1479; *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 396.) A showing of changed circumstances is required whether the prior order contemplated permanent support (see, e.g., *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1297 (*Geraci*)), pendente lite support (see, e.g., *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638; *Dietz*, at p. 396) or the amount was established by agreement (see § 3591; *West,* at p. 247; *In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982). A modification order must be based on the facts and circumstances existing at the time the modification is requested. (*In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.)

4

"Whether a modification of a spousal support order is warranted depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court[,] the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown." (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 357-358.)  An abuse of discretion occurs when there is no substantial evidence of a material change of circumstances (*In re Marriage of Dietz, supra,* 176 Cal.App.4th at p. 398) or the trial court "misperceives the law." (*Los Angeles Times Communications LLC v. Los Angeles County Bd. of Supervisors* (2003) 112 Cal.App.4th 1313, 1327.) Thus, "'[a]s long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it.'" (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.)

> 2. *The Trial Court Erred by Applying the Standard for a Pendente Lite Temporary Award of Spousal Support To Reduce the Existing Permanent Award Adopted in the MSA*

"Awards of temporary spousal support do not serve the same purpose, nor are they governed by the same procedures, as awards for permanent spousal support." (*In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 166.)  "The purpose of temporary spousal support is to maintain the status quo as much as possible pending trial.  [Citations.]  By contrast, permanent spousal support is supposed to reflect a complex variety of factors established by statute and legislatively committed to the trial judge's discretion, including several factors which tend to favor reduced support, such as the 'goal' that the supported spouse should become self-supporting within a reasonable period of time." (*In re Marriage of Schultz* (1997) 60 Cal.App.4th 519, 525.)

The issue here is whether the court properly proceeded by ordering temporary support under section 3600, which is based solely on the supported spouse's immediate needs and the supporting spouse's ability to pay (see, e.g., *In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 29), or was instead constrained by the provisions of section

5

4320, which must be considered in modifying an award of permanent spousal support.[4] (See, e.g., *West, supra,* 152 Cal.App.4th at p. 247; *Geraci, supra,* 144 Cal.App.4th at pp. 1297-1298.) A trial court's failure to consider the factors set out in section 4320 in modifying a permanent order of spousal support constitutes reversible error. (See *Geraci,* at p. 1297; *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304 ["trial judge must

---

[4] Section 4320 states: "In ordering spousal support under this part, the court shall consider all of the following circumstances: [¶] (a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [¶] (1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [¶] (2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties. [¶] (b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party. [¶] (c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living. [¶] (d) The needs of each party based on the standard of living established during the marriage. [¶] (e) The obligations and assets, including the separate property, of each party. [¶] (f) The duration of the marriage. [¶] (g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party. [¶] (h) The age and health of the parties. [¶] (i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party. [¶] (j) The immediate and specific tax consequences to each party. [¶] (k) The balance of the hardships to each party. [¶] (l) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties. [¶] (m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325. [¶] (n) Any other factors the court determines are just and equitable."

6

both recognize and *apply* each applicable statutory factor in setting spousal support"]; *In re Marriage of Zywiciel* (2000) 83 Cal.App.4th 1078, 1081-1082 [abuse of discretion to substitute computer program (for example, the DissoMaster) for required consideration and appropriate weighing of statutory factors]; *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 9 [same]; see generally Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2012) ¶ 17:146, pp. 17-36.2 to 17-36.3 (rev. # 1, 2012).)

In this case an order of temporary spousal support was entered in September 2008, not long after entry of the judgment dissolving the marriage. In January 2010 the parties entered into the MSA, which included an agreement for spousal support "until the death of either party, remarriage of Renee or order of court." The MSA thus contemplated the court would retain post-judgment jurisdiction to modify the stipulated amount and provided its terms were subject to enforcement under Code of Civil Procedure section 664.6. Remaining issues were then tried to the court, and a final judgment was entered in April 2011. It was the parties' failure to confirm the settlement in the judgment that led the court—at the suggestion of Alan's counsel—to treat the motion as a request for modification of pendente lite support.

The failure of the parties to incorporate the MSA into the judgment, however, did not render it ineffective. Unless otherwise specifically agreed by the parties in writing or orally before the court, MSA's providing for spousal support are subject to modification by the court even though the agreement has not been approved by the court or merged into a judgment or order. (See § 3591, subd. (a);[5] *In re Marriage of Maytag* (1994) 26 Cal.App.4th 1711, 1714-1715 [§ 3591 extends to "private agreements" and is not

[5] Section 3591 provides: "(a) Except as provided in subdivisions (b) and (c), the provisions of an agreement for the support of either party are subject to subsequent modification or termination by court order. [¶] (b) An agreement may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate. [¶] (c) An agreement for spousal support may not be modified or revoked to the extent that a written agreement, or, if there is no written agreement, an oral agreement entered into in open court between the parties, specifically provides that the spousal support is not subject to modification or termination."

7

limited to agreements that have been approved by a court and merged into a judgment or order], citing *Esserman v. Esserman* (1982) 136 Cal.App.3d 572, 577 ["neither court approval nor merger into a decree is necessary before a court may exercise its power to modify"].)

Alan has failed to cite any authority for his argument the support provided in the MSA was in the nature of a temporary award and could be modified under section 3600. Indeed, the behavior of the parties belies any notion the MSA had no permanent effect until it had been merged into the judgment. In his original declaration submitted in support of the request for modification, Alan characterized the MSA as voluntary and binding and acknowledged he had paid the specified monthly amount of $5,500.[6] And, as discussed, Judge Juhas, who had stayed Alan's motion to incorporate the MSA into the judgment pending resolution of the prior appeal, considered the support provision to be permanent in nature subject to the constraints of section 4320.

Of course, if Alan had objected to the support provision in the MSA, he could have sought relief from its enforcement. If he had been successful in such a challenge, Renee might then have been justified in seeking an order of temporary support pending any appeal from that order. (See *In re Marriage of Horowitz* (1984) 159 Cal.App.3d 377, 381.) But that is not what happened here. Alan did not attack the validity of the MSA; he simply sought modification of the support provision according to its terms. That is, he sought a post-judgment modification of support.

The record below, including the statement of decision drafted by Alan, demonstrates the order modifying support was based solely on the DissoMaster calculation he provided and the imputation of $2,000 in monthly income to Renee. It failed to reflect the mandatory consideration and findings based on the factors contained

---

[6]    Pending its merger into the judgment pursuant to Code of Civil Procedure section 664.6, the MSA remained enforceable by contract remedies. (See *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1220-1221.)

8

in section 4320. Accordingly, remand for consideration of the factors set forth in section 4320 is necessary. (See *Geraci, supra,* 144 Cal.App.4th at p. 1299.)[7]

## DISPOSITION

The order granting modification of the existing spousal support agreement is reversed. The matter is remanded to allow the court to consider the factors set forth in section 4320. Renee is to recover her costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

SEGAL, J.[*]

---

[7]     In light of our ruling, we need not consider the other issues raised by Renee.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.