Filed 8/26/15  Marriage of Plunkett CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Marriage of CHRISTA and CHAD PLUNKETT. | D066371 |
| CHRISTA PLUNKETT, | |
| Respondent, | (Super. Ct. No. ED74842) |
| v. | |
| CHAD PLUNKETT, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Robert O. Amador, Judge.  Affirmed.

Patrick L. McCrary for Appellant.

John J. McCabe, Jr., for Respondent.

Chad Plunkett appeals an order denying his request for attorney fees and child

support and finding that he never provided an accounting of $181,951 in predistribution

community assets.  On appeal, Chad[1] contends that the trial court erred in: (1) concluding it was bound by the law of the case on the issue of attorney fees; (2) finding there was no change in circumstance warranting an award of child support; and (3) awarding Christa Plunkett $9,750 in attorney fees as a sanction and denying his attorney fees based on a lack of accounting.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Chad and Christa filed a petition for dissolution of marriage on July 21, 2008.  On November 29, 2011, the court issued a statement of decision, which set forth the following findings:  Chad and Christa were married in October 1992 and separated in July 2008.  They had two minor children of the marriage, Cassidy Plunkett and Chad Plunkett, Jr. (Chad Jr.)  Chad and Christa owned three real properties that were acquired during the marriage.  In February 2008, Christa inherited her mother's home.

During the marriage, Christa worked as a hairdresser and Chad maintained, improved, managed and rented the couples' real properties.  They maintained a middle class standard of living by relying on Christa's income, credit cards, home equity lines of credit, rental income, and home sale proceeds.

The court found that Chad and Christa had several equity lines of credit secured by their real property.  In the months prior to their separation, between March 2008 and July 2008, Chad withdrew $231,399 in funds against these lines of credit.  A substantial

---

[1]     As is the custom in family law proceedings, and in the interest of clarity, we refer to the parties by their first names.  (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 390, fn. 1.)  We intend no disrespect.

portion of these funds were deposited into an account in the name of Chad's father. Christa was unaware that these equity lines of credit had been drawn upon until sometime after their separation.

The court stated that it was unclear why Chad had made these withdrawals in such a short period of time, but found that the timing corresponded to a period of conflict in the marriage, when divorce was being contemplated, and banks were cutting equity lines of credit due to declining property values. The court found that a significant amount of the funds were unaccounted for and believed that Chad had used the money to support himself postseparation. The court stated it was "suspicious of the motivations surrounding such large draws upon virtually every line of credit the couple had in place without consultation with Christa in such a short period of time [, and found] the fact that the funds were deposited into an account to which Christa did not have access[ ] disturbing."

With respect to income and financial need, the court found that Christa works as a hairstylist and earns approximately $2,600 per month. Although during the marriage Chad managed and rented the couples' real properties and worked briefly as a certified public accountant, the court found that he had "the ability to undertake general labor and service industry jobs, recognizing he may have some physical limitations."

Based on these findings, the court ordered[2] the sum of $181,951 to be characterized as a predistribution of community property assets to Chad. The court ordered that the parties share joint legal custody of their minor children, with physical custody of Chad Jr. to Chad and physical custody of Cassidy to Christa, with no timesharing. The court reserved jurisdiction over child and spousal support. The court awarded Christa $50,000 in attorney fees and costs, but did not indicate whether it was based upon the parties' needs and ability to pay or as a sanction based upon Chad's conduct. Neither party filed any objections to the statement of decision. Thereafter, when the court entered judgment, it set child support at $0. Chad appealed.

On February 8, 2013, while the appeal was pending, Christa filed a postjudgment request in the trial court for, among other things, a sanction in the amount of $15,000 against Chad under Family Code section 271.[3] Chad also filed a request to modify the trial court's order with respect to attorney fees, child support, and spousal support and for a stay pending appeal on May 1, 2013. On March 23, 2013, the court held a hearing in which the court stayed the proceeding pending the appeal and ordered Chad to make five job contacts per week.

On August 3, 2013, this court affirmed the trial court's judgment in *In re Marriage of Plunkett* (Aug. 8, 2013, D062540 [nonpub. opn.]). On September 19, 2013, the trial

---

[2]    The court's orders are set forth in both the statement of decision issued on November 29, 2011 and the judgment of dissolution issued on June 20, 2012.

[3]    All references are to the Family Code unless otherwise indicated.

4

court held a hearing and again continued the matter because the Court of Appeal had not yet issued a remittitur, but the court ordered the parties to produce current income and expense declarations and for Chad to produce his taxes for the previous year.[4]

A remittitur was filed on October 8, 2013. On November 21, 2013, in light of the appellate decision and the direction of the remittitur, Christa requested her costs on appeal.

On January 30, 2014, the court heard counsels' argument regarding attorney fees and child support and continued the matter.[5] Although Chad's counsel repeatedly argued that the court could not decide the issues before it without addressing the accounting of the $231,000 of funds that Chad withdrew from the equity lines of credit[6], the court responded, "I am not going to rehash that," but also stated it would give counsel the opportunity to finish his argument the next time they were in court.

On February 14, 2014, the trial court held another hearing without a court reporter. The court issued a statement of decision on March 18, 2014, finding that the court had not received an accounting of the $181,951 in predistribution community property assets;

---

[4] At the September hearing, Chad's counsel stated that there were four matters before the court that needed resolution: child support, spousal support, attorney fees on appeal, attorney fees for the current action, and the accounting.

[5] With respect to the court's request that Chad seek employment, it appears that Chad submitted a series of online requests.

[6] Chad's counsel argued that a special master was needed to properly address the accounting issue and the issues dependent on that accounting. Chad's counsel also admitted that the appellate court had found that Chad had the missing funds and he could therefore pay attorney fees.

5

there was insufficient evidence "to establish any change in circumstances from the statement of decision findings of Judge Gentry on November 29, 2011" that would warrant modification of the child support order; denying attorney fees for the purpose of child support because the relative income available to Chad and Christa is "roughly equal"; and awarding Christa $9,750 in attorney fees as a sanction against Chad under section 271.

In a supplemental judgment entered on May 23, 2014, the trial court also denied Chad's and Christa's cross-requests for attorney fees incurred in the appeal based on the legal doctrine of the law of the case. Chad appeals.

## DISCUSSION

Chad contends that the trial court erred as a matter of law in determining that the issue of attorney fees had been resolved on appeal and it was bound by the law of the case. Specifically, Chad contends the Court of Appeal only addressed and upheld the original award of $50,000 in attorney fees to Christa, but not his most current request for attorney fees incurred by his new attorney on appeal and for subsequent motions. Therefore, the doctrine of the law of the case is inapplicable.

Chad also contends that he provided an extensive accounting of $181,951 in predistribution community assets, therefore the court's grant of attorney fees to Christa and denial of his fees based on a lack of accounting was error.

Chad further contends there was a change in circumstance justifying an award of child support because at the time of the original judgment on November 29, 2011, Chad

6

and Christa each lived with a minor child and at the time he renewed his request for child support on May 1, 2013, the child living with Christa was going to turn 18 and be out of high school in July 2013.

We conclude that the trial court did not abuse its discretion in denying Chad's requests for attorney fees or child support because Chad's financial need and ability to pay attorney fees and child support were resolved in the initial trial court and the former appeal. We further conclude that the trial court's finding that Chad did not provide an accounting of the $181,951 in predistribution community assets is supported by substantial evidence.

A. *Res Judicata and Law of the Case*

Only community property which is left unadjudicated by a decree of divorce or dissolution is subject to future litigation. (*In re Marriage of Snyder* (1979) 95 Cal.App.3d 636, 638.) "According to that aspect of the doctrine of res judicata known as collateral estoppel, a party is collaterally estopped from relitigating an issue necessarily determined in a prior adjudication if (1) the issue decided in the previous litigation is identical with that presented in the action in question; (2) there was a final judgment on the merits in the first action; and (3) the party against whom the plea is asserted was a party . . . to the prior action. The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy." (*In re Marriage of Buckley* (1982) 133 Cal.App.3d 927, 935.)

7

In addition, pursuant to the doctrine of the law of the case, " 'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1518.) "The doctrine applies only if the issue was actually presented to and determined by the appellate court. [Citation.]" (*People v. Yokely* (2010) 183 Cal.App.4th 1264, 1273 (*Yokely*).) Any principle or rule of law necessary to the appellate decision becomes the law of the case and "must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal." (*Tally v. Ganahl* (1907) 151 Cal. 418, 421.) "[T]he law-of-the-case doctrine governs only the *principles of law* laid down by an appellate court, as applicable to a retrial of fact . . . ." (*People v. Boyer* (2006) 38 Cal.4th 412, 442.) "[S]ufficiency of the evidence is a question of law to which the doctrine of law of the case applies." (*In re Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 821 (*Steinberg*).)

However, "during subsequent proceedings in the same case, an appellate court's binding legal determination 'controls the outcome only if the evidence on retrial or rehearing of an issue is substantially the same as that upon which the appellate ruling was based. [Citations.]' [Citation.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 246-247.) "Where, on remand, 'there is a substantial difference in the evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked.' [Citation.]" (*Ibid.*) "The doctrine is one of procedure that prevents parties from seeking

8

reconsideration of an issue already decided absent some significant change in circumstances."  (*Yokely, supra*, 183 Cal.App.4th at p. 1273.)

Due to these doctrines, Chad is barred from resurrecting the issues of the availability of $181,951 in assets and his ability to pay attorney fees and child support therefrom, because these issues were adjudicated and decided on the merits in the initial trial court and the subsequent appeal with the same result.  The initial trial court adjudicated Chad's ability to pay attorney fees and child support and the merits of characterizing $181,951 as a predistribution of community assets to Chad.  Based on its findings, the court attributed the missing $181,951 to Chad, awarded Christa $50,000 in attorney fees and costs, and set child support at $0.

In the subsequent appeal, this court affirmed the trial court's findings in all respects.  In that appeal, Chad asserted in relevant part that the trial court (1) failed to make appropriate findings in its award to Christa of attorney fees based upon her need and his ability to pay; (2) erred in not granting attorney fees to him based upon his need and ability to pay; (3) erred in charging him with a preliminary distribution of community funds; (4) erred in not giving him credit for living expenses he paid from those funds; and (5) erroneously failed to make findings and orders concerning child and spousal support.

This court specifically concluded that the trial "court did not err in charging Chad with preseparation assets" because:

> "It is undisputed that Chad withdrew over $231,000 from the parties' equity lines of credit within three months prior to the separation in July 2008.  During trial, Chad identified the specific withdrawals from the lines of credit during those three months.  In his

9

preliminary declaration of disclosure, Chad acknowledged there was $186,000 remaining from his withdrawal from one line of credit. The evidence of Chad's secret withdrawals was detailed in the statement of decision in support of [the lower court's] finding that Chad would be charged with a preliminary distribution of community funds removed from the various accounts in the sum of $181,951."

This court also concluded that the trial court did not err in finding that the $181,951 in withdrawn funds evidenced Chad's ability to pay attorney fees and supported the award of $50,000 in attorney fees to Christa and the denial of Chad's attorney fees. Upon review of the trial court record, this court found that:

"[T]he record reflects that the court had an adequate basis to either award fees to Christa based upon need, or as a sanction against Chad. As to need-based fees, the court found that Christa made $2,600 a month as a hairstylist and that Chad had the ability to earn money consistent with "general labor and service industry jobs." The [lower] court further attributed $181,951 in withdrawn funds to Chad as a preliminary distribution of community assets, further evidencing an ability to pay. [¶] Moreover, there was ample evidence from which the court could base an award of attorney fees under section 271, which does not necessitate a showing of need by the requesting party. The trial in this matter centered in large part on Chad's withdrawal of over $231,000 from the couple's equity lines of credit without notice to, or permission from, Christa. In its statement of decision, the court found these actions "suspicious" and "disturbing." These findings amply support the court's imposition of attorney fees under section 271 and a denial of fees to Chad."

As to child and spousal support, this court further found there was substantial evidence to support the trial court's decision to set child support at $0 because:

"At trial, the court had before it both Chad's and Christa's income and expense declarations. Both declarations set forth, in detail, the nature and extent of each party's income and respective financial need. In the statement of decision, the court detailed the work history of the parties, including Chad's college history and prior

10

work as an accountant. The court also noted in its statement of decision that Chad had the skills and ability to secure employment. Thus, there [was] substantial evidence in the record to support the court's decision concerning child and spousal support."

As a matter of law, these conclusions regarding Chad's financial resources, needs and ability to pay attorney fees and child support must be adhered to in any subsequent proceeding on these same issues. Therefore, to the extent the trial court order being appealed here is consistent with these previous decisions in attributing $181,951 in withdrawn funds to Chad and thus relies on these funds as evidence of his ability to pay child support and attorney fees, it is not error.

B. *Accounting*

Absent a showing of facts that would manifest an injustice resulting from the application of the doctrines of res judicata or the law of the case, these prior court rulings constitute the conclusive and binding determination of Chad's financial resources, needs, and abilities.[7] We find that Chad has made no such showing.

---

7    Chad does not contend that the prior judgment was procured by fraud or perjury. "Section 2120 et seq. authorizes a dissolution judgment to be vacated, irrespective of res judicata concerns, where the judgment was procured by fraud or perjury. In such cases, the interest in assuring finality of judgments is outweighed by other considerations." (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1152.)
       Moreover, the doctrine of the law of the case can be disregarded to avoid an unjust decision, but for the " 'unjust decision' exception to apply, 'there must at least be demonstrated a manifest misapplication of existing principles resulting in substantial injustice.' " (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 309.) Since we conclude that Chad failed to provide an accounting of the missing funds, we find no injustice in applying the law of the case here.

11

Chad contends in this appeal that he provided an extensive accounting of $181,951 in predistribution community assets, therefore the court's grant of attorney fees to Christa and denial of his fees based on a lack of accounting was error. The trial court, however, found it had not been provided with an accounting of the $181,951 predistribution of community property assets even though Chad claimed "that he has used it for living expenses" and produced "Income and Expense documents filed in April 2013 and October 2013." Based on the information provided, the court concluded that there was insufficient evidence establishing "any change in circumstances from the statement of decision findings of Judge Gentry on November 29, 2011."

Due to the lack of accounting, the court also found that the award of attorney fees to Christa as a sanction would not impose an unreasonable burden on Chad. Specifically, it stated that absent the attribution of the $181,951 missing assets to Chad, it "would find it difficult to not find that the sanction would impose an unreasonable financial burden" on Chad.

We presume the trial court's judgment is correct, indulge every intendment and presumption in favor of its correctness, and start with the presumption that the record contains evidence sufficient to support the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) "Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial

12

evidence, contradicted or uncontradicted,' to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.)

First, we note that Chad, in his briefing to this court, states that the trial court did not have an accounting in February 2014, because "that accounting had been a part of the original judgment and the issue was not before the court as the amount that Chad was to be charged with had been determined." Yet, based on the accounting Chad provided to the initial trial court, that court found that it "[could not] account for a significant amount of the funds drawn from the equity lines of credit and [believed that] Chad [had used the money] to support himself post-separation."

Second, our review of the record demonstrates that the trial court's finding of a lack of accounting is supported by substantial evidence. On September 23, 2013, Chad filed a declaration detailing his financial circumstance. He stated that his parents were supporting him and that he was living in a home they purchased. He stated that he filed for bankruptcy because he had no money and no assets. He also stated that his parents paid for his postjudgment legal fees and fees to file for bankruptcy.

According to the income and expense declaration dated April 30, 2013, Chad has been unemployed since 1987, has assets amounting to $5,000, and monthly living expenses of $2,460. He owed his parents $9,000 in rent and $30,000 for appeal and

13

living expenses. He paid $6,900 in attorney fees and owed his attorney $7,000. The income and expense declaration, dated October 16, 2013, set forth all of the same information except that he then owed his parents $13,000 in rent and his attorney $11,000.

Upon review of the record, we agree with the trial court that the evidence does not provide an accounting of the missing funds. Since the documents reflect that his parents pay for his rent and living expenses and some of his legal fees, at most, these income and expense declarations account for only $6,900 he paid in attorney fees. There is no apparent source of income, nor evidence of how $181,951 was spent. In fact, all of his liabilities remain delinquent. His rent increases and remains unpaid. His expenses for litigation and living expenses remain stagnant at $30,000 but unpaid. His attorney fees also remain unpaid.

We thus conclude Chad failed to account for the missing funds. What is more, given Chad's failure to demonstrate a change in financial position from when the prior courts reviewed this accounting issue, the trial court was not at liberty to ignore the missing assets in evaluating Chad's most recent requests for attorney fees and child support. We further conclude that because of the lack of accounting, the trial court did not abuse its discretion in awarding attorney fees to Christa due to Chad's abusive litigation practices.[8]

---

[8] An award of sanctions pursuant to section 271 is reviewed under the abuse of discretion standard. (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 652.) The

C. *Attorney Fees and Child Support*

In the absence of new evidence indicating a change in Chad's financial position, the trial court did not abuse its discretion in denying Chad's requests for attorney fees or child support because the principal issues before the court were previously adjudicated and decided on the merits in prior proceedings upon substantially the same evidence.[9]

The trial court here was tasked with reassessing Chad's financial resources, needs and abilities to determine whether he should be awarded (a) attorney fees for the appeal,

___

record reflects that sanctions were warranted here because of Chad's attempts to prolong this "long and tortured" case. In this regard, the court stated:

> "The parties have failed to cooperate and have fought six protracted years of litigation. When [Chad] received an adverse decision he filed bankruptcy proceedings to attempt to discharge his debts and make [Christa] 'win' a hollow victory. He filed an appeal and lost on [sic] very issue. He failed to agree to a single item in the proposed accounting and filed a motion for a special master to be appointed. The main purpose was to fight the initial battle again as well as to argue that the issues were too complicated to be handled by this Court. When the issues were in fact gone over by this Court in the trial, the matters were dealt with rather expeditiously. This litigation is the type of litigation which Family Code 271 was enacted to prevent and sanctions are necessary to prevent future abusive litigation. The Court 'may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging . . . cooperation between parties and attorneys.' "

[9]     *Steinberg, supra*, 66 Cal.App.3d at p. 821 ("since sufficiency of the evidence is a question of law to which the doctrine of law of the case applies, the reviewing court would first be required to decide whether the evidence presented at the third trial was 'materially' or 'essentially' or 'substantially' different from that presented at the second trial to decide whether the first appellate decision controlled.")

15

(b) attorney fees incurred in pursuing a modification of the previous child support order and subsequent motions, and (c) child support.

1.    Attorney Fees on Appeal

Attorney fees on appeal from a marriage dissolution proceeding may be awarded if four conditions are met:  "(1) the requesting spouse must show a need for the award; (2) the paying spouse must have the ability to pay the fees; (3) the appeal must be taken in good faith; and (4) there must be reasonable grounds for the appeal, although this does not imply that the requesting spouse must prevail on appeal."  (*In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 78.)  "The granting or denial of counsel fees on appeal in divorce litigation is within the sound discretion of the trial court and an order made either way will not be reversed in the absence of an abuse of discretion."  (*Hunter v. Hunter* (1962) 202 Cal.App.2d 84, 92.)

2.    Attorney Fees Incurred for Child Support

A court may award attorney fees incurred in any proceeding subsequent to the entry of a dissolution judgment if it finds there is a "disparity in access to funds to retain counsel" after considering the respective incomes and needs of the parties.  (§ 2030.)  The statute requires that the award be "just and reasonable under the relative circumstances of the respective parties" and for the court to consider the "need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately."  (§§ 2030, 2032.)  We review a trial court's order on a request for

16

attorney fees under section 2030 for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283.)

Here, the record shows that the issue of Chad's need for and ability to pay attorney fees was reheard in the most recent trial court proceeding upon substantially the same evidence. The trial court ordered the parties to produce current income and expense declarations and for Chad to produce his taxes for the previous year. The court was "provided with multiple Income and Expense documents filed in April 2013 and October 2013 as well as declarations of the parties and information regarding [Chad's] medical and educational status." Nevertheless, the court found that it had not "received an accounting of the 'pre-distribution of the community property assets' $181,951" and did not find that "sufficient evidence ha[d] been presented to establish any change in circumstances from the statement of decision findings of Judge Gentry on November 29, 2011."

After reviewing all of the evidence regarding Chad's and Christa's incomes, assets, and liabilities, the court also found that Christa was in a better financial position due to the unexpected inheritance she received. However, the court determined that Chad was "in an equal position to continue the fight and does so regardless of the consequences. First by the support of his family and second by his unaccounted for pre-distribution of community property assets $181,951."

17

Based on these findings, the court denied Chad's request for attorney fees on appeal based on the law of the case and denied Chad $2,360 in attorney fees incurred in the child support request because Chad's and Christa's incomes were "roughly equal."

We conclude that the trial court was bound by the appellate court's conclusion that the missing $181,951 is evidence of Chad's need and ability to pay for attorney fees. Hence, it correctly applied the law of the case in this respect. Nevertheless, the trial court weighed Christa's and Chad's relative circumstances and determined that they were roughly equal. Considering the court was bound to consider the $181,951 available to Chad but also evaluated Christa's financial position and found no disparity in access to funds to retain counsel, we do not find that the court abused its discretion in denying Chad attorney fees for the appeal or his pursuit of child support.

3.      Child Support

"A child support order may be modified when there has been a material change of circumstances. [Citation.] The party seeking the modification bears the burden of showing that circumstances have changed such that modification is warranted. [Citation.] The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court. [Citation.] The reviewing court will resolve any conflicts in the evidence in favor of the trial court's determination." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1054 (*Cryer*).)

"The amount of child support normally payable is calculated based on a complicated algebraic formula found at Family Code section 4055 . . . . The formula

18

support amount is "presumptively correct" in all cases (see §§ 4057, subd. (a), 4053, subd. (k)), but "may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053 . . . ." [Citation.] (*Cryer, supra*, 198 Cal.App.4th at pp. 1047-1048.)

Section 4053 sets forth a number of principles, foremost among them being the protection of the child's best interest: "The guideline seeks to place the interests of children as the state's top priority." Among other principles, section 4053 also provides, "(a) [a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life"; "(d) [e]ach parent should pay for the support of the children according to his or her ability"; and "(f) [c]hildren should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children."

"In light of these principles, departure from the standard child support formula may be appropriate when application of the formula 'would be unjust or inappropriate due to special circumstances in the particular case' (§ 4057, subd. (b)(5)), so long as the variance is consistent with section 4053." (*Cryer, supra*, 198 Cal.App.4th at pp. 1047-1048.) This special circumstances exception gives the trial court "considerable discretion to approach unique cases on an ad hoc basis." (*Id.* at p. 1049; *In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1043 [stating that "the court, in child support cases, is not

19

just supposed to punch numbers into a computer and award the parties the computer's result without considering circumstances in a particular case which would make that order unjust or inequitable."].)

A trial court's determination of whether modification of a child support order is warranted is reviewed for an abuse of discretion. (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 384.) When applying the abuse of discretion standard, the reviewing court is limited to "determining whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion." (*In re Marriage of De Guigne* (2002) 97 Cal.App.4th 1353, 1360.) Thus, " '[w]e do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order. [Citation.]' [Citation.]" (*In re Marriage of Henry* (2005)126 Cal.App.4th 111, 116.)

Given that a trial court has significant discretion to depart from the standard child support formula upon a finding of special circumstances affecting the equities of the case, we find that the trial court did not abuse its discretion in denying Chad child support. Although Chad did allege a change in circumstance, the fact that the child living with Christa was about to turn 18 and be out of high school,[10] the trial court had broad

---

[10]    *Cryer, supra*, 198 Cal.App.4th 1039, 1048 ("The trial court (at least implicitly) acknowledged there was a change in circumstances . . . Sarah's time share had decreased from 65 percent to 4 percent.")

discretion to determine whether the modification of the child support order was warranted. The record shows that the trial court exercised its discretion in denying modification of the child support order by taking into account the special circumstance of this case, the missing assets, which would make rigid application of the child support formula unjust. (See, e.g., *In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1084 [explaining that "a court may deem assets a 'special circumstance' that may justify a departure from the guideline figure for support payments."].) The court explained:

> "The Court has two options before it. The first is to simply impute minimum wage income of $1,387 to Mr. Plunkett and impute $1,000 per month income for the rent that he received. This Court does not believe that the rent is actually a loan but is actually a gift and imputation of $1,000 per month is appropriate.
>
> "The Court finds income of Ms. Plunkett to be $2,606 per month and interest and dividends of $1,800 per month based on her Income and Expense declaration of September 9, 2013. The attached Dissomaster printout calculation shows child support of $808 per month if the court were to use that calculation.
>
> "However, the information that continues to be missing is the missing $181,951 and its availability for support and the Court would consider that a maximum child support contribution due. If the Court simply followed that logic the Court could order five months of support for a maximum Judgment of $4,040 for the period May 1, 2013 through October 18, 2013.
>
> "However, the Statement of Decision filed November 29, 2011 lines 11/22 and affirmed on page 11 and 12 of the appeal stating there is substantial evidence to support the Courts award of setting child and spousal support at zero was based upon a four day trial.
>
> "The Court has been provided with multiple Income and Expense documents filed in April 2013 and October 2013 as well as declarations of the parties and information regarding the Respondents medical and educational status. The Court has never

received an accounting of the 'pre-distribution of the community property assets' $181,951.  Respondent . . . argues that he has used it for living expenses.

"This Court does not find that sufficient evidence has been presented to establish any change in circumstances from the statement of decision findings of Judge Gentry on November 29, 2011."

The court clearly exercised its discretion in deviating from the standard child support formula, and instead denied the request based on the missing funds.  The court's statements reveal that, in denying Chad child support, it appropriately took into account the $181,951 in missing assets and the prior courts' findings regarding these funds.  We thus conclude that these missing funds are a special circumstance which justified departing from the standard child support formula, and that the best interests of the child living with Chad were not compromised by the court's decision since it directs the missing assets to be allocated to that child's care.  Therefore, the trial court did not abuse its discretion in denying modification of the child support order.

DISPOSITION

The order is affirmed.  Respondent is entitled to recover costs on appeal.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.