Filed 2/17/22  Marriage of Kress CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of NANCY R. and ROBERT L. KRESS. | B303371<br><br>(Los Angeles County<br>Super. Ct. No. BD519842) |
| NANCY R. KRESS,<br><br>Appellant,<br><br>v.<br><br>ROBERT L. KRESS,<br><br>Respondent. | ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 10, 2022, be modified as follows:

In footnote 3, beginning on page 7, delete the third and fourth sentences of the footnote and replace with the following

sentence:  It is unnecessary to address the timeliness of the second notice of appeal because our reversal of the April 17, 2019 order moots the appeal from the November 26, 2019 order that refused to set aside the April 17, 2019 order.

[There is no change in the judgment.]

_____

KNILL, J.*            EDMON, P. J.           EGERTON, J.


*     Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/10/22  Marriage of Kress CA2/3 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of NANCY R. and ROBERT L. KRESS. | B303371 |
| | (Los Angeles County Super. Ct. No. BD519842) |
| NANCY R. KRESS,<br><br>        Appellant,<br><br>    v.<br><br>ROBERT L. KRESS,<br><br>        Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Gary D. Roberts, Judge.  Reversed and remanded.

Law Office of Leslie Ellen Shear, Julia C. Shear Kushner and Leslie Ellen Shear for Appellant.

Thompson & Thompson, Blake D. Thompson and Jeffrey S. Valladolid for Respondent.

Nancy R. Kress (wife) appeals a postjudgment order reducing the spousal support obligation of Robert L. Kress (husband) from $5,250 per month, pursuant to their stipulated judgment of dissolution, to $3,750 per month, pursuant to his request for an order (RFO) to modify spousal support.

We conclude the trial court abused its discretion in reducing spousal support, because husband failed to show a change of circumstances based on an alleged diminution in his income affecting his ability to pay support. The undisputed evidence established notwithstanding husband's partial retirement, his annual income at the time of the RFO hearing was actually higher than his income at the time judgment was entered. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**FACTUAL AND PROCEDURAL BACKGROUND**

I. *The 2013 Stipulated Judgment of Dissolution*

Husband has been a California attorney since 1972. Wife obtained a law degree in 1987 but did not pass the bar exam. The parties were married in 1988. Wife worked part-time between 1988 and 2002, but she was not employed in any capacity thereafter. In 2010, after nearly 22 years of marriage, the parties separated. There are no minor children of the marriage.

In 2013, the parties entered into a stipulated judgment of dissolution. As relevant to this appeal, the judgment provided for permanent spousal support of $5,250 per month, until death, remarriage, or further order of the court. The judgment stated wife had not been employed since 2002, and husband earned $225,000 in 2011. The judgment also stated that absent the stipulation, the court would have ordered support taking into

account the factors set forth in Family Code[1] section 4320, including the goal that wife shall be self-supporting within a reasonable period of time.

The judgment awarded each spouse one-half of the community portion of the ABA Retirement Funds Wallin, Kress, Reisman & Krantz Profit Sharing Plan (the ABA Plan), with the community property portion previously determined to be 68 percent of the entire plan; one-half of the community property portion of the Rosemead PARS Retirement Enhancement (the PARS Plan), with the community property portion stipulated by the parties to be 75 percent of the entire plan; and one-half of the community property portion of the Public Employees Retirement System plan (the PERS Plan), with the community property portion stipulated by the parties to be 75 percent of the entire PERS Plan. Monthly benefits under the PARS Plan and the PERS plan were already being paid to the parties.

The judgment confirmed to husband as his sole and separate property 100 percent of the separate property portion of the ABA Plan, the PARS Plan and the PERS Plan. The judgment also confirmed as husband's separate property 100 percent of his rollover IRA with Morgan Stanley.

II. *Husband Requests Modification of Spousal Support Following His Partial Retirement*

In 2018, five years after entry of the stipulated judgment, husband filed an RFO to modify spousal support. Husband asserted his income had dropped by approximately 50 percent since the 2013 judgment, because although he still worked as city

---

[1] All unspecified statutory references are to the Family Code.

3

attorney for the City of La Verne, he had retired as city attorney for the City of San Gabriel.

On December 13, 2018, the trial court conducted an evidentiary hearing. Husband testified he was a municipal lawyer and his firm contracted with smaller cities to serve as their city attorney. In October 2017, he retired as city attorney for the City of San Gabriel. He had reached his 70th birthday and had decided to downsize his practice. At that time, half of his income from the practice of law disappeared. His sole remaining client was the City of La Verne. At that time, his monthly average income attributable to the City of La Verne was $11,600. Further, he was drawing social security benefits of $2,473 per month, as well as pension income of $3,425 per month. In addition, the ABA Plan, a 401k account, had a balance of about $1,150,000, from which he took a required minimum distribution at age 71 of $34,768. He also received a distribution of $8,096 from his IRA account for the year.

Wife, who was 63 at the time, testified she worked part-time in husband's law office until about 2002, doing research, editing and answering the phones. She had no immediate plan to seek employment. She had a condominium in Whittier owned free and clear; it was acquired prior to the marriage and was rented out for $908 per month. She owned a home in Upland, which was her primary residence and which she occupied part-time. Her adult son also resided in the Upland home on a full-time basis; his sole contribution to the household expenses was paying the gardener. She also owned a home in Massachusetts where she resided about five months of the year; the Massachusetts property, on which she owed about $180,000, did not generate any rental income. She had about $342,000 in the

4

ABA Plan, and about $990,000 of equity in real estate. Her 2016 federal tax return showed she had a pension and annuity distribution of $49,174 from the PERS Plan, the PARS Plan and the ABA Plan.

In closing argument, husband's counsel asserted husband's retirement at age 70 from his position as city attorney for the City of San Gabriel, which resulted in the loss of about $10,000 per month in income, amounted to a change of circumstances that enabled the court to reconsider the $5,250 per month spousal support agreed to in the judgment. With respect to the required minimum distributions husband was receiving, counsel argued it was not appropriate "to force him to continue to maintain a level of spousal support because he is choosing to draw down on . . . retirement assets, that he has contributed to during 45 years as an attorney." In response to the court's inquiry, counsel conceded the judgment did not contain a *Gavron* warning.[2]

Wife's counsel argued husband's "ability to pay has not changed significantly, if at all, since the judgment was entered. So I don't think that's a factor the court could consider in modifying spousal support."

After hearing testimony and argument, the trial court ruled as follows: "First, there has been a material reduction in [husband's] income. And I am not persuaded that it's appropriate to use mandatory distributions as a means of off-setting that. I do believe that's double dipping. [¶] Second, I find that the

---

[2] *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712, requires "some reasonable advance warning that after an appropriate period of time the supported spouse [is] expected to become self-sufficient or face onerous legal and financial consequences."

5

judgment adequately puts [wife] on notice of her need to become self-supporting. . . . [¶] The third factor that I take into account is that [wife] has at least one asset . . . in the form of the home in Massachusetts that could be used to generate income . . . . [¶] The question then becomes . . . what sort of modification is appropriate. Taking into account the marital standard of living . . . [and] that this is a very long-term marriage and . . . I assume [husband] would have expected to have to continue to provide some significant support . . . for some period of time[,] . . . I find that it's appropriate to modify the spousal support to $3,750 a month, retroactive to the date of the filing of the RFO."

On April 17, 2019, the trial court signed and filed an order after hearing that reduced wife's spousal support from $5,250 to $3,750 per month based on the following findings: "(1) There has been a material change of circumstances . . . [¶] (2) There has been a material reduction in [husband's] income. [¶] (3) It is not appropriate to use mandatory retirement distributions to offset [husband's] reduction in income. [¶] (4) The Judgment adequately puts [wife] on notice of her need to become self-supporting. [¶] (5) It is still possible for [wife] to make some income toward her own support. [¶] (6) There is no reason that at the present time [wife] could not obtain minimum wage employment. [¶] (7) [Wife] has at least one asset, the home in Massachusetts, that could be used to generate income. [¶] (8) Both [wife] and [husband] are able to live an upper middle class standard of living on the assets they have available. [¶] (9) This is a long-term marriage. [¶] (10) The Court considered all Family Code section 4320 factors in rendering its decision."

6

III. *Wife Requests The Trial Court to Vacate The April 17, 2019 Order*

On May 10, 2019, wife moved to vacate the April 17, 2019 order pursuant to Code of Civil Procedure section 663 and to reinstate the prior spousal support order, or in the alternative, to set a new trial. (Code Civ. Proc., § 657.) In addition, wife requested an award of $20,000 in attorney fees.

On November 26, 2019, the trial court rejected wife's challenges to the April 17, 2019 order, stating, "Code of Civil Procedure section[s] 663 and 659 are not the proper basis on which to bring this matter before the Court. [¶] The Court finds the motions to be procedurally inappropriate. [¶] The Court finds if it were to consider the Motions on their merits, it would likewise deny them because the Court reviewed the Court file and reviewed the evidence and is comfortable that the [prior] decisions . . . were the appropriate ones." The trial court ordered husband to pay $10,000 in attorney fees to wife's counsel, finding a significant disparity between the parties in terms of their respective ability to pay attorney fees and costs.

IV. *The Appeals*

Wife appealed the April 17, 2019 and November 26, 2019 postjudgment orders, in notices of appeal filed October 15, 2019 and June 11, 2020, respectively. The two appeals were consolidated into the instant case.[3]

---

[3]     The October 15, 2019 notice of appeal in B303371 is timely because there is no indication notice of entry of the April 17, 2019 order was served by the clerk or by a party. Therefore, the 180-day rule applies (Cal. Rules of Court, rule 8.104(a)(1)), and because the 180th day, October 14, 2019 was a court holiday, the notice of appeal filed the next day was timely. However, the June 11, 2020 notice of appeal in B306505 is untimely, because even if

7

## DISCUSSION

I. *Governing Legal Principles and Standard of Appellate Review*

"A spousal support order is modifiable only upon a material change of circumstances since the last order. *'Change of circumstances' means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs.* It includes all factors affecting need and the ability to pay. Where there is no substantial evidence of a material change of circumstances, an order modifying a support order will be overturned for abuse of discretion. [Citation.] 'The modification of a spousal support order is reviewed on appeal for abuse of discretion. In exercising its discretion the trial court must follow established legal principles and base its findings on substantial evidence. [Fn. omitted.] If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court.' [Citation.]" (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246, italics added.)

II. *The Trial Court Abused its Discretion in Reducing Spousal Support*

Wife contends the trial court applied the wrong legal standard in granting the downward modification of spousal support. We agree.

A "supporting spouse's attainment of retirement age may constitute a material change of circumstances for purposes of a

the 180-day rule applies, the notice of appeal was filed more than 180 days after the November 26, 2019 order. Therefore, the November 26, 2019 order denying wife's motion to vacate the April 17, 2019 order is not reviewable.

8

motion to modify a support order, depending on the circumstances of a given case.  The loss of income as a result of a supporting spouse's retirement at an appropriate age [may] be such a case." (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 404.)  Here, however, the circumstances surrounding husband's attainment of retirement age do not support a reduction in spousal support.

Husband sought a modification of spousal support based on the assertion his income has been reduced by approximately 50 percent due to his retirement from one of the cities for which he served as city attorney.  However, husband failed to show an overall change of circumstances based on a diminution in his income.  The evidence established his annual income at the time of the hearing on the RFO to modify support was actually higher than the $225,000 income set forth in the judgment awarding wife spousal support of $5,250 per month.

Specifically, husband's testimony at the hearing and his income and expense declaration showed he received an average of $11,600 per month for his work for the City of La Verne, which amounted to $139,200 per year.  Further, he received social security benefits of $2,473 per month, amounting to $29,676 per year, as well as pension income of $3,425 per month, amounting to $41,100 per year.  In addition, the ABA Plan, which is a 401k account, had a balance of about $1,150,000, from which he drew a required minimum distribution of $34,768 at age 71.  He also received a distribution of $8,096 from his IRA account for the year.  Thus, at the time of the RFO hearing, husband admittedly had an income of $252,840 per year, which was higher than the $225,000 annual income set forth in the stipulated judgment of dissolution awarding wife spousal support of $5,250 per month.

9

There was no other basis to find a change of circumstances that would justify a reduction in spousal support. Insofar as the stipulated judgment divided the community assets and awarded wife one-half of the community portion of the ABA Plan, the PARS Plan and the PERS plan, those circumstances were expressly contemplated by and provided for in the judgment. (See, e.g., *In re Marriage of Dietz*, *supra*, 176 Cal.App.4th at p. 400 ["the accessibility and possible increase in value of Laura's share of the retirement accounts were part of the parties' expressed reasonable expectations in entering the 1999 stipulated judgment and cannot constitute a material change of circumstances on these facts"].)

As for the required minimum distributions from husband's 401k and IRA accounts, the trial court stated, "I am not persuaded that it's appropriate to use mandatory distributions as a means of off-setting [the reduction in husband's earnings]. I do believe that's double dipping." We disagree. " '[I]n every case where one spouse receives permanent spousal support from the other spouse, the source is from the separate property of the paying spouse, including . . . earnings or property which were once the community property of both spouses.' " (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 91, fn. 14, superseded by statute on other grounds as stated in *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 914.)

With respect to withdrawals from retirement plans, the court in *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, explained, "[w]ithdrawals from retirement plans, when made, are treated as ordinary income" (*id*. at p. 12), and "once the participant reaches age 70 1/2, the court possesses discretion to consider as income available for spousal support an amount

10

greater than the statutorily mandated minimum withdrawals." (*Id*. at p. 13; accord, *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, 1380 [only investment income, not principal, should be available to pay spousal support, and husband is not required to invade or exhaust his retirement assets in order to pay spousal support]; see Hogoboom et al., Cal. Prac. Guide: Family Law (The Rutter Group 2021) ¶ 17:212.1.) Here, however, wife did not seek to impute to husband as income available for spousal support an amount greater than the statutorily mandated minimum withdrawals. She merely asked the trial court to include in husband's income the required minimum distribution amounts actually distributed to husband from his 401k and IRA accounts. The trial court's failure to include those actual distributions in husband's income available for spousal support was erroneous.

Finally, the trial court based the reduction in spousal support, in part, on wife's failure to obtain employment, and it found no reason why she could not obtain minimum wage employment. We note wife was 63 years old at the time of the hearing. Leaving aside whether the judgment adequately placed wife on notice of her need to become self-supporting, the judgment stated wife's last full-time employment was in 1988, she thereafter worked on a part-time basis, and she had not been employed in any capacity since 2002. Thus, it does not appear wife's failure to secure employment in recent years was a change in circumstances. Moreover, husband's RFO asserted a change of circumstances based on a 50 percent reduction in *his* income, not because wife had not taken steps to provide for her own support.

In sum, the trial court abused its discretion in reducing spousal support, because the undisputed evidence established,

11

contrary to husband's assertion, there had been no diminution in his income, and thus, no reduction in his ability to pay spousal support.

## DISPOSITION

The April 17, 2019 order reducing husband's spousal support obligation from $5,250 to $3,750 per month is reversed, and the matter is remanded for further proceedings consistent with this opinion.  Wife shall recover her costs on appeal.

**NOT TO BE PUBLISHED**


KNILL, J.*


We concur:



EDMON, P. J.



EGERTON, J.

_____

*       Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.